[Civ. No. 2675. Third Appellate District.—February 21, 1924.]

JAMES G. CONNER, Appellant, v. CHARLES GARRETT, Respondent.

[1] CONTRACTS—OPERATION OF MINE ON SHARES—CONTINUANCE OF RELATIONSHIP—INFERENCE.—Where a written agreement, whether it be called a lease, a license, or a contract of employment, executed by the owner of a mine in favor of another, creates a relation between the parties for a given time, out of which there arises reciprocal rights, and said parties, after the expiration of the time so limited, continue such relation by mutual consent, whether express or implied, it is to be inferred, in the absence of evidence

to the contrary, that their respective rights growing out of that relation remain unchanged.

[2] ID.—EXTENDED TERM—PAROL EVIDENCE—NONPREJUDICIAL ERROR. In an action to recover the value of a given share of the gold extracted by defendant from certain mining property belonging to plaintiff, conceding the trial court commits error in permitting witnesses for defendant to testify that, at the time the original written lease was executed, plaintiff stated that defendant might continue to mine the property under the terms of the lease after the expiration thereof, plaintiff suffers no prejudice therefrom, where there is no evidence showing that their respective rights were changed by subsequent agreement.

APPEAL from a judgment of the Superior Court of Shasta County. Walter E. Herzinger, Judge. Affirmed.

The facts are stated in the opinion of the court.

Carter & Smith for Appellant.

Chenoweth & Leininger for Respondent.

FINCH, P. J.—The plaintiff sued to recover the value of one-half of the gold extracted by defendant from certain mining property belonging to plaintiff. He was given judgment for fifteen per cent of the gold so extracted and he prosecutes this appeal from the judgment.

In the year 1911 the defendant went into possession of the property under an oral agreement to prospect and mine the same and to pay to plaintiff a royalty of from ten to twenty-five per cent, depending upon the grade of ore removed. Defendant conducted mining operations upon the property under this oral agreement until March 10, 1917, when he was given a written lease thereof for a term ending September 10, 1918. The lease provided that "the lessor, in consideration of the rents, royalties, covenants and agreements hereinafter reserved, let unto the lessee" the said mining property "together with the appurtenances to have and to hold," etc.; that the lessee should work the mine continuously and pay the lessor "fifteen per cent royalty on all ores extracted from said mine; to timber the mine and repair old timbering when necessary; to not assign this lease, or any interest thereunder; . . . to deliver up to the lessor the premises with the appurtenances and all improve-

ments in good order and condition . . . without demand or
further notice, on said tenth day of September, 1918, at
noon or any time previous, upon demand for forfeiture'';
that ''upon the violation by the lessee, of any covenant re-
served the term of lease may, at the option of the lessor,
expire and the lease and premises with the appurtenances
shall become forfeited to the lessor.'' The defendant mined
the property under the lease until the end of the term
thereof. Plaintiff testified that he then informed defend-
ant that the lease ''was unsatisfactory and it would not be
continued,'' that plaintiff ''would not tie up the property
any further.'' The defendant denied this testimony and
testified: ''He told me when the lease expired just to con-
tinue in my work the same as always.'' There is no dispute
as to defendant's occupancy and operation of the property
after the termination of the written lease in the same man-
ner as before, except as to the last four weeks thereof. The
parties made no agreement as to the terms upon which the
defendant was to operate the mine after the expiration of
the written lease, but the plaintiff had full knowledge of the
defendant's operation thereof and it is clear that he ac-
quiesced therein. There is no contention here to the con-
trary. Pursuant to an understanding between the parties,
the plaintiff, from time to time, shipped the gold taken
from the mine and, after deducting from the proceeds the
royalty to which he was entitled, he deposited the remainder
to the credit of defendant in a local bank. From Septem-
ber 10, 1918, to August, 1920, the defendant and another
person working with him obtained gold of the total value
of but $78.80 although, according to defendant's testimony,
he was engaged in prospecting and mining the property
during all but about three months of that time. Plaintiff
shipped this gold as usual, but gave all the proceeds to de-
fendant and his associates. Plaintiff testified that he did
not take out his percentage in this instance because he
''thought they needed it.'' During the month of August,
1920, gold to the value of nearly $1,600 was extracted, and
the present controversy is over the division thereof. The
whole of the month of August seems to have been consumed
in taking out this gold. Plaintiff testified that he called
defendant's attention to the pocket from which this gold
was taken about the first of August, 1920, and that they

mined it together. The defendant testified that he had discovered the pocket two or three weeks before the first of August and that he had taken practically all of the gold therefrom before the plaintiff had knowledge thereof. Defendant admitted that plaintiff did four or five days' work in connection with the extraction of the gold found in this pocket and in timbering the tunnel, but testified that he did not request plaintiff to do the work and that it was in part such as plaintiff had been accustomed to do at other times of clean-up. Since the court found in accordance with defendant's testimony, it must be assumed to be true on appeal. Appellant contends that the instrument referred to herein as a lease was not such in fact but was "a mere license to work the mining property on a royalty basis." **[1]** The character of the instrument, for the purposes of this case, seems to be unimportant. If it be called a lease, as in *Northern Light Min. Co.* v. *Blue Goose Min. Co.*, 25 Cal. App. 282, 292 [143 Pac. 540], a license, as in *Wheeler* v. *West*, 71 Cal. 126 [11 Pac. 871], or a contract of employment, as in *Hudepohl* v. *Mining & Water Co.*, 80 Cal. 553, 558 [22 Pac. 339], the result is the same. The agreement created a relation between the parties for a given time, out of which there arose reciprocal rights. When the parties, after the expiration of the time so limited, continued the relation by mutual consent, whether express or implied, it is to be inferred, in the absence of evidence to the contrary, that their respective rights growing out of that relation remained unchanged. This principle finds illustration in cases of leases and contracts of employment. The question is not that of a renewal of the relation for a definite time, as in case of holding over and payment and acceptance of rent after the expiration of the term of a lease, but of the rights of the parties during the time they voluntarily maintain the relation after the expiration of the term agreed upon. "As a general rule the tendency arising from the tenant's holding over with the consent of the landlord is presumed to be upon the same terms as the original lease, so far as they are applicable to the new tenancy. Thus it is generally held that the terms of the original lease as regards the amount and time of payment of the rent apply." (16 R. C. L. 1161; Underhill on Landlord and Tenant, sec. 143; Tiffany on Landlord and Tenant, sec. 210.) "If persons

have contracted for the performance of certain services for a definite period at a fixed rate, and the employment continues beyond the period agreed upon, in the absence of any new contract it will be presumed that the employment continued under the same contract and upon the terms originally fixed.'' (18 R. C. L. 533.) ''The rule of law applicable in such cases is, that where the person hired continues in employment without any new contract, the fair presumption is, that both parties understood that the same salary is to be paid.'' (*Nicholson* v. *Patchin,* 5 Cal. 475.) After the decision last cited was rendered the legislature embodied the rule therein stated in section 2012 of the Civil Code. If the contract here involved be treated as a mere license to conduct mining operations upon the terms therein provided, no reason appears why the foregoing rule should not be applicable to a voluntary continuation of the relation after the period originally agreed upon.

[2] It is urged that the court erred in permitting witnesses for defendant to testify that, at the time the written lease was executed, the plaintiff stated that defendant might continue to mine the property under the terms of the lease after the expiration thereof. If it be conceded that the admission of such testimony was error, the plaintiff suffered no possible prejudice therefrom because, as stated, in the absence of evidence to the contrary, it is to be inferred that the parties understood that the gold produced by defendant's operation of the mine after the time provided in the written agreement was to be divided in accordance with the terms of that instrument.

The judgment is affirmed.

Shields, J., *pro tem.,* and Plummer, J., concurred.