217 P.2d 586

ALABAM FREIGHT LINES v.
STEWART et al.

No. 5137.

Supreme Court of Arizona.

April 24, 1950.

Langmade & Langmade, of Phoenix, for appellant.

Udall & Peterson, of Safford, for appellee.

KELLY, Superior Judge.

The defendant below, appellant here, prosecutes this appeal from the judgment of the court without a jury in favor of the landlords for damages to the real estate occurring during occupancy by the defendant in breach of the covenants of the lease.

In the year 1935 plaintiffs (appellees here) as owners leased certain real property including the freight depot involved in this controversy, by indenture, to Alabam Freight Company, a corporation, the name of which has been subsequently changed by the amendment of its articles to Alabam Freight Lines, for the term of one year. Before the expiration of the term the corporation appeared in the bankruptcy court in reorganization proceedings, a trustee was appointed who continued to

142

conduct its usual operations, including the use of the leased premises, and in May of 1937 the trustee was discharged and the same going business restored to the corporation and for many years it continued in the occupancy of the same premises until a relatively short time before the commencement of this action for damages to the building. These are shown by the testimony to have been incurred during the last two or three years prior to the surrender of the possession to plaintiffs. In the course of the reorganization proceedings no order appears to have been made affecting the lease in any way; and the final decree, which is an exhibit, seems fully to support the finding of the trial court that those proceedings effected no change in the relationship of the parties to the lease as landlord and tenant.

The lease contains four several stipulations on the subject of repairs. They must be set forth before a full understanding of the question presented by this litigation may be reached. 1. The lessee covenanted "that at the termination of this lease the lessee will return the premises above described to the lessors in as good a state of repair as they now are (in), natural wear, inevitable accidents and acts of God excepted"; 2. lessee agreed "to permit the lessors to enter into said premises at all reasonable times for the purpose of examining the same and making repairs and alterations that may be necessary for the safety and preservation of said premises"; 3. "It is further agreed that lessors agree to keep the building in a good state of repair"; 4. "unless any particular damage or injury to said building has been occasioned by the negligence of the lessee or its agents, in which event it shall be the duty of the lessee to make said repairs."

It is readily apparent that we are not now dealing with a contract of unequivocal clarity, but with one which contains clauses of different and substantially inconsistent implications necessary to be carefully surveyed to come at the intent of the parties or at the real meaning to be attributed to the language used in the light of the nature of the damages shown by the testimony. Because it has no direct bearing upon the issue we can eliminate from consideration that clause (No. 2) granting to the lessors the optional right of entry and inspection and of making such repairs as might be indicated by their judgment.

The primary question is one as to whether the covenant first above set forth, all of them appearing in the order in which they have been stated, is an absolute one taking precedence over the others, and fixing a definitive liability; or whether it is modified by the later clauses casting the duty of repair upon the lessor and holding the lessee only for such injury to the building as may have been caused by the negligent acts of its agents.

Five assignments have been made, but the only ones deemed requisite to consider have to do with whether the proofs are adequate to establish negligence, and whether the measure to be applied to the damages is represented by the absolute liability to return the premises in their condition as of the time of the letting, or the restricted liability for injury caused by negligent acts.

The damages proved, there being no dispute they were sustained nor as to their extent in money value, fall into two categories. The doors and walls of the depot building were damaged as a result of being rammed by heavy trucks of the weight, laden, of 25 tons. The concrete floor and adjacent sidewalk were broken and in part ruined from the passage over them of trucks of this enormous weight.

■ Although defendant makes the contention that none of this damage is shown to have resulted from negligence, and that it was but the natural result of the use contemplated to be made of the premises at the time of the letting, it is not difficult to agree that the finding is supported by the evidence that it was negligent for the trucks to be so operated that they rammed into the doors, the door jambs, and the wall of the building while backing into the loading dock at speeds of from 2 to 3 miles per hour. The office of a door is by no means that of furnishing an object to run into, nor of a wall to supply a backstop for trucks. Steering wheels and brakes are provided for these controls. It does not take from the negligent quality of the operation that, in the language of defendant's own witness, its agent, "it did not happen very often", nor that these impacts occurred but intermittently, on relatively rare occasions. To the contrary, their very infrequency argues they should not have happened at all. It must be remembered also that we are here dealing with an appeal, in an office quite distinct from that of the trier of fact. The well established rule is that regardless of conflicts in the evidence the finding if reasonably supported must stand as the statement of what the fact is. Error is not presumed but must be made affirmatively to appear.

■ The damage to the floor and sidewalk constituting the entrance driveway stands in a separate category. No negligent act is shown to be a causative factor in producing the injury, no more than that from the movement of trucks over it the concrete slab collapsed and was broken. The letting contemplated the very use that was made of the floor and sidewalk and such use alone carries no implication of negligence. If the liability depends upon a negligent act the claim for these items must fall. Each element of damage is itemized and under the uncontradicted proofs may be separated from every other.

■ Appellees make it clear their action is for damage for breach of covenant of the lease; and there is abundant authority for the proposition that "when a tenant holds over after the expiration of a written lease, the law implies that he holds over subject to the terms of the lease as far as the same are applicable to a monthly letting." Haeussler v. Holman Paper Box Co., 49 Mo.App. 631; W. H. Hobbs & Sons v. Grand Trunk Ry. Co., 93 Vt. 392, 108 A. 199; Conner v. Garrett, 65 Cal.App. 661, 224 P. 786; 32 Am.Jur., Landlord & Tenant, 798. The rights contended for sound in contract, and the question recurs as to which of the mutually inharmonious clauses of the contract shall be taken as the measure of the liability of the tenant. It could be possible for both to coincide; but in this instance they are divergent, and only by construction can the question be determined.

■ The fundamental rules are well illustrated by several Arizona cases: Smith Stage Co. v. Eckert, 21 Ariz. 28, 184 P. 1001, 7 A.L.R. 995; Doran v. Oasis Printing House, Inc., 24 Ariz. 475, 211 P. 562; Kreig v. Hammels, 29 Ariz. 280, 240 P. 1031; Babbitt Bros. Trading Co. v. Marley, 28 Ariz. 589, 238 P. 392; Aldous v. Intermountain Building & Loan Co., 36 Ariz. 225, 284 P. 353; Miller Cattle Co. v. Mattice, 38 Ariz. 180, 298 P. 640. The predominant and all-essential rule is to ascertain the intent of the parties, and within the limit of legal principles to give effect to it. To perform that office all of the clauses must be considered, none ignored; no clause may be given effect as though it stood by itself, disjointed from every other, but all must be scanned; each must be given effect, but all in relation to each other, to bring harmony, if possible, between all parts of the writing.

■ Applying these standard rules, and rationalizing the clauses of the contract with them the covenant amounting in effect to one of absolute liability for all damage cannot reasonably be held to be the effect of this contract without a complete disregard of the clause fixing the limit of the tenant's duty as the repair of damages produced by its negligent acts. If to disjoint the clauses, giving effect to some and rejecting others without reasonable necessity, were an allowable construction it would be difficult for any man to know what bargain he had made, which is manifested by the complete writing rather than by its isolated parts. A particular contingency was provided for, and the words must have been meant to serve a purpose, and are not meaningless. The general clause must give way to the particular as a modifier of it. The two may thus be harmonized. Any other conclusion can be reached only by neutralizing and holding as surplusage the modifying clause, a result

not authorized if the entire instrument is susceptible of another construction which reasonably and harmoniously with its general purpose gives effect to all its provisions. That the first clause was not intended to be the sole measure of the tenant's liability becomes particularly clear when regard is had to the further agreement on the part of the lessors "to keep the building in a good state of repair" except for damage ensuing from negligent acts of the lessee. To take the clause providing for absolute liability as the measure of the tenant's duty the other clauses, both of which are equally a part of the contract, must be wholly excised from it, a method of construction not permissible if they can reasonably within the fair intent of the instrument be given meaning and effect.

The inclusion in the judgment of $480 for damage to the floor and sidewalk was erroneous and this sum must be deducted therefrom. As modified, the judgment is affirmed.

LA PRADE, C. J., and STANFORD, PHELPS and DE CONCINI, JJ., concurring.

NOTE: Justice LEVI S. UDALL having disqualified himself, the Honorable HENRY C. KELLY, Judge of the Superior Court of Yuma County, was called to sit in his stead.