261 P.2d 1003

HAMBERLIN et al. v. TOWNSEND.
No. 5745.

Supreme Court of Arizona.
Oct. 1%, 1953.

Johnson & Shelley, of Mesa, for appellants.

Emmett R. Feighner, of Phoenix, for appellee.

UDALL, Justice.

This action was brought to recover damages for breach of warranty of title to certain personal property sold to plaintiffs by defendant. The case was tried to the court without a jury, and judgment was rendered for defendant, from which plaintiffs appeal. The parties appear before us in the same order as they appeared in the trial court. While Mrs. Hamberlin is party to the record, she did not testify and we shall refer to Mr. Hamberlin as plaintiff, and to appellee Fred Blair Townsend as defendant.

Defendant and William L. Hammontree, as copartners, leased from Salim Ackel, now deceased, certain premises in the Jefferson Hotel building in Phoenix, wherein the partners planned to conduct a restaurant business. Defendant acquired Hammontree's interest, and the latter is not a party to this action. This lease agreement will be referred to as the Ackel-Townsend lease. It was for the term April 1, 1946, to March 31, 1951, with option to renew for five more years. Paragraph 8 of this lease set out the agreement of the lessor and

lessees concerning the fixtures and personal property on the leased premises, and provided:

"8. (A) It is understood between the parties hereto that all fixtures or other properties or equipment built in or attached to said premises shall, upon the expiration of this lease, be left in their place and shall then be and become the property of the Lessor. (B) with the understood exception, however, that any counter and stools installed in said premises, whether or not same are attached to the freehold, shall nevertheless be and become, upon the expiration of this lease, the property of said Lessor. (C) Any and all removable equipment or property not attached to the freehold, so as to cause damage to same in its removal, may be moved from said premises by said Lessees, upon the expiration of this lease. However, Lessees agree that Lessor may have a fair appraisal made of their said property prior to removal and Lessor is hereby accorded the right to buy same, or any part thereof, over and above inventory attached, and said counter and stools, for the appraisal price so fixed. (D) It is understood, however, between the parties hereto, that there will be turned over by the Lessor to the Lessees, certain coffee shop inventory as per copy attached to this lease. Lessees agree that if they do not use said equipment it shall nevertheless be considered the property of said Lessees, and said Lessees agree to leave, upon the expiration of this lease, item for item, said property or equipment either removed or destroyed during the tenancy under this lease. The Lessees further agree that Lessor shall not be obligated to replace, repair or redecorate said premises during the term of this lease." (NOTE: The alphabetizing has been added for our convenience.)

Late in the month of March, 1949, defendant began negotiating to sell this restaurant business to plaintiff. The sale was effected through Grace & Grace, realty brokers. Construing the evidence in a light most favorable to defendant, it appears that during these negotiations plaintiff, defendant, and W. W. Grace met in defendant's offices and there defendant read aloud the Ackel-Townsend lease and its attached list and discussed the provisions thereof with plaintiff and Grace. Plaintiff, however, denied that such discussion occurred.

The sale of the going restaurant business and its equipment was to be effected by a conditional sales contract, while the tenancy of the restaurant premises was to be handled by a sublease agreement. Defendant drafted these two instruments, and plaintiff took them to an attorney for advice. The conditional sales contract referred to the sublease, and the sublease incorporated the Ackel-Townsend lease by reference and expressly stated that the sublessee would

faithfully keep and perform each and all of the promises, agreements, and covenants remaining to be performed by the lessee in the Ackel-Townsend lease. Plaintiff was advised by his attorney (Dix Price) that he should learn the contents of the Ackel-Townsend lease, as its provisions were controlling.

The parties met on April 1, 1949, and executed the two instruments. As we said, the sublease agreement incorporates the Ackel-Townsend lease by reference, states that plaintiff assumes the burdens thereof, and recites that the same is attached thereto. The conditional sales agreement has an attached inventory listing the furnishings and equipment of the business. Included in this list is one item (a walk-in ice box) which falls within clause (A) of paragraph 8 of the Ackel-Townsend lease, supra; three items (a U-shaped counter, a straight counter, and twenty-four stools) which fall within clause (B), supra; and eight items (three cup racks, one meat table, one steam table, two ranges, one four-door ice box, one table, one high chair, and the booths) which fall within clause (D), supra. There is a claim for, and testimony concerning, one waffle iron, but it is not clear just what plaintiff contends about it.

Upon the termination of the original lease and sublease, Mr. Ackel exercised his rights given in paragraph 8, supra, and claimed ownership of all these enumerated items. Plaintiff now brings this action to recover the reasonable value of these same items, upon the theory that defendant sold them to him with warranty of title thereto, and that such warranty was breached because at the time of the sale Ackel had an interest in this same property.

Plaintiff's position in the trial court seems to have been that he signed a contract without reading all of it; that thereafter he discovered the unread part (the Ackel-Townsend lease) was other than he hoped it to be; that no evidence was admissible to show that he had read the whole thereof, or that it was read to him; that the parts which he read were to be strictly construed against defendant who drew the contract; and that the part he did not read was to be held a nullity.

Plaintiff's first contention upon appeal is in essence that the evidence shows defendant warranted clear title to the chattels, and that this warranty was breached because the title transferred was subject to the rights given to Ackel in paragraph 8 of the Ackel-Townsend lease. He asserts that the title retention clause in the conditional sales contract is an express warranty of title. We agree that such a clause may in a proper case be an express warranty of clear title, see Annotation 132 A.L.R. 338. However, such a construction in this case would completely ignore and nullify everything contained in paragraph 8, supra. Plaintiff declares it is proper to ignore the whole of paragraph 8 because contracts are to be construed most strongly against the party

drawing them. We quote from 17 C.J.S., Contracts, § 324:

"Construction against Party Using Words.

"Where a contract is ambiguous it will be construed most strongly against the party preparing it or employing the words concerning which doubt arises, the reason for the rule being that a man is responsible for ambiguities in his own expressions and has no right to induce another to contract with him on the supposition that his words mean one thing, while he hopes the court will adopt a construction by which they would mean another thing more to his advantage; but this rule, it is said, is the last one which the courts will apply, and then only if a satisfactory result cannot be reached by the other rules of construction. * * *"

This rule of strict construction contended for by plaintiff ignores the rule found in 17 C.J.S., Contracts, § 297:

"Construction as a Whole.

"A contract must be construed as a whole, and the intention of the parties is to be collected from the entire instrument and not from detached portions, it being necessary to consider all of its parts in order to determine the meaning of any particular part as well as of the whole.

"Individual clauses in an agreement and particular words must be considered in connection with the rest of the agreement, and all parts of the writing, and every word in it, will, if possible, be given effect. * * *"

And in 17 C.J.S., Contracts, § 309, we find:

"Inconsistent and Conflicting Clauses in General.

"Where two clauses are inconsistent and conflicting, they must be construed so as to give effect to the intention of the parties as collected from the whole instrument, and apparently conflicting provisions must be reconciled, rather than nullify any, if reconciliation can be effected by any reasonable interpretation, it being necessary for this purpose to consider the entire instrument and the surrounding circumstances."

The above quotation, taken from Corpus Juris, was cited in Smith Stage Co. v. Eckert, 21 Ariz. 28, 184 P. 1001, 7 A.L.R. 995.

Furthermore, in Alabam Freight Lines v. Stewart, 70 Ariz. 140, 217 P.2d 586, 588, we said:

" * * * The rights contended for sound in contract, and the question recurs as to which of the mutually inharmonious clauses of the contract shall be taken as the measure of the liability of the tenant. It could be possible for both to coincide; but in this instance they are divergent, and only by construction can the question be determined.

"The fundamental rules are well illustrated by several Arizona cases: (citations). The predominant and all-essential rule is to ascertain the intent of the parties, and within the limit of legal principles to give effect to it. To perform that office all of the clauses must be considered, none ignored; no clause may be given effect as though it stood by itself, disjointed from every other, but all must be scanned; each must be given effect, but all in relation to each other, to bring harmony, if possible, between all parts of the writing."

 We do not believe the rule of strict construction should be used to render express provisions of a contract nugatory where there is any reasonable alternative. Therefore, we conclude that a reasonable construction of the whole contract requires us to set up the title retention clause in the conditional sales agreement against paragraph 8, supra, and determine how the terms of the one modify the other. There is ample basis to support the trial court in holding there was a conditional sale of certain chattels to plaintiff; that with regard to these same chattels, the vendor had previously undertaken certain contractual obligations to a third party, Ackel; that at the time of the conditional sale and as part of an entire contract, the vendee expressly assumed these same contractual obligations. The result is that in this contract there is no express warranty of perfect title.

Next, to establish an implied warranty of title, plaintiff relies upon 52–513, A.C.A. 1939, which reads:

"Warranties implied—Exceptions.— In a contract to sell or a sale, unless a contrary intention appears, there is an implied warranty on the part of the seller

\* \* \* \* \* \*

"That the goods shall be free at the time of the sale from any charge or encumbrance in favor of any third person, *not declared or known to the buyer before or at the time when the contract or sale is made.* \* \* \*" (Emphasis supplied.)

See also the construction in Old Pueblo Motors v. Abarca, 37 Ariz. 29, 288 P. 666.

 We hold that paragraph 8 of the Ackel-Townsend lease is an express declaration of the charge or encumbrance in favor of Ackel, and therefore there is no implied warranty of title in this case.

 It has been suggested by counsel that at the time of sale defendant had no title to the chattels in question, but that he was the bailee of Ackel and his rights were possessory only. Assuming purely for the sake of argument that if true this would change the result, still paragraph 8, supra, will not admit of such construction. It is fundamental in the law of sales that title passes when the parties so intend, and paragraph 8 shows clearly the intent that

title shall not pass before expiration of the lease.

The final contention is that it was error to admit defendant's testimony that he read the Ackel-Townsend lease to plaintiff and discussed the provisions thereof with him. Plaintiff claims the parol evidence rule was offended by admitting this evidence of the negotiations of the parties prior to the execution of their written agreement. A careful reading of the transcript of evidence convinces us that the learned trial court carefully avoided infringing this rule. No evidence of prior oral or written agreements, or contemporaneous oral agreements, was admitted. Such agreements, when offered to add to, or vary the integration, are the only matters properly within the prohibition of the parol evidence rule, see Restatement of the Law, Contracts, Sec. 237. See also 32 C.J. S., Evidence, § 930. This extrinsic evidence showed plaintiff had actual as well as constructive knowledge of the contents of the agreement he signed, but it did not alter the legal effect of such agreement nor show the contents was other than it was in fact. This evidence of the prior negotiations was properly admitted. See Restatement of the Law, Contracts, Secs. 226, 227, 230, and 235(d) setting out in detail the applicable rules. We hold that the trial court was entitled to construe the instrument in the light of all the facts and circumstances surrounding its drafting and execution.

Judgment affirmed.

STANFORD, C. J., and PHELPS and LA PRADE, JJ., concurring.

NOTE: Justice DUDLEY W. WINDES was disqualified because of having been the trial judge.