UNITED STATES of America, Appellant,

v.

CITRUS VALLEY FARMS, INC., Appellee.

No. 19657.

United States Court of Appeals Ninth Circuit.

Aug. 17, 1965.

J. Edward Williams, Acting Asst. Atty. Gen., Roger P. Marquis, Edmund B. Clark, Attys., Dept. of Justice, Washington, D. C., William P. Copple, U. S. Atty., Phoenix, Ariz., for appellant.

J. Gordon Cook, McKesson, Renaud, Cook & Miller, Phoenix, Ariz., for appellee.

Before MERRILL and BROWNING, Circuit Judges, and FOLEY, District Judge.

MERRILL, Circuit Judge.

This appeal is from judgment awarding compensation for the taking of land by condemnation. At issue is the manner of fixing the value of cotton allotments which the land enjoyed at the time of the Government's taking.

The land condemned consisted of a 2200–2300 acre farm (with some 1500 acres under cultivation), located in Citrus Valley, Arizona. The owners, at the time of the taking, were using the farm for the raising of cotton under a 550-acre cotton allotment made pursuant to the terms of the Agricultural Adjustment Act, 7 U.S.C. § 1341 et seq.

The Government in its brief summarizes the purpose and operation of the Act as follows:

"In order to prevent the 'marketing of excessive supplies of cotton' in interstate and foreign commerce and to 'maintain an orderly flow of an adequate supply of cotton in such commerce,' the cotton allotment system was established. 7 U.S.C. sec. 1341. Under it, the Secretary of Agriculture determines, upon the basis of estimated supply and demand for a particular year, whether there will be a quota of cotton for that year and, if so, what amount of acreage in the Nation will receive an allotment (sec. 1342). The quota must be approved by a referendum of farmers (sec. 1343). The total is apportioned by states, counties, and finally among individual farms, based upon the cotton production history of the aforementioned units (sec. 1344)."

Under the Act the allotment or quota apportionment to a particular tract of land attaches to that land and, except in unusual circumstances, cannot be transferred apart from it. By 7 U.S.C. § 1378 (a),[1] severance of the allotment from the

1. 7 U.S.C. § 1378(a) provides in part: "Notwithstanding any other provision of this chapter, the allotment determined for any commodity for any land from which the owner is displaced because of acquisition of the land for any purpose, other than for the continued production of allotted crops, by any Federal, State, or other agency having the right of eminent domain shall be placed in an allotment pool and shall be available only for use in providing allotments for other farms owned by the owner so displaced. Upon application to the county committee, within three years after the date of such displacement, or three years after the enactment of this section, whichever period is longer, any owner so

land is provided for where the land is taken by condemnation. The owner of the condemned farm may, under the specified conditions, transfer the allotment to other lands.

At the trial there was no more than the usual spread between the testimony of Government experts and those of the owner as to the value of the land as enhanced by the allotment. A Government witness valued the property with its allotment at $865,000. An expert for the owner fixed the value at $1,050,000 In accordance

with its view of the proper method of evaluating the interest condemned, the Government also presented testimony of its expert to the effect that the cotton allotment enhanced the value of the lands involved by the sum of $413,000, and that fair compensation for the lands without the allotment was therefore $452,000.

The District Court instructed the jury [2] that in order to determine fair compensation they should first determine the fair market value of the land with the allotment included; and, second, determine

displaced shall be entitled to have established for other farms owned by him allotments which are comparable with allotments determined for other farms in the same area which are similar except for the past acreage of the commodity, taking into consideration the land, labor, and equipment available for the production of the commodity, crop-rotation practices, and the soil and other physical factors affecting the production of the commodity."

2. The instruction given over the Government's objection was as follows:

"If the preponderance of the evidence shows that the governmental policy which I have described, that is, the right to a cotton allotment, enhanced the value of Citrus Valley Farm on July 1, 1959, the jury should give effect thereto in its determination of fair market value.

However, it must be borne in mind that defendant is entitled to be compensated only for that which was taken from him by the Government. It is a part of the governmental policy respecting cotton allotments, as expressed in Section 1378 of the Agricultural Adjustment Act, that, if a cotton farm is condemned, the owner has a personal right within three years to re-establish and use the cotton allotment on other farms to be acquired and owned by the displaced owner, subject to the county average allocations of the county or counties in which the new farm or farms are located. This has sometimes been referred to during the trial as the Section 1378 right.

If you find from a preponderance of the evidence that the cotton allotment rights retained by defendant and not taken by the Government, in accordance with Section 1378, had a pecuniary value to the defendant, it follows that insofar as the cotton allotment affected the market value of Citrus Valley Farm on July 1, 1959, the just compensation to which

defendant is entitled is something less than defendant would have received if he had voluntarily sold the farm with the cotton allotment to a willing buyer.

Because a cotton allotment cannot be sold or traded separate from the farm to which it is attached, there is no available direct evidence to enable you to place a value on the Section 1378 right. We, therefore, have received other evidence bearing upon such value, for example, the opinions of persons professing to have special knowledge of the economics of cotton farming, evidence of sales of farms with cotton allotments and of farms without cotton allotments, evidence of leases of cotton farms, and a considerable amount of general information regarding the production of cotton. You should weigh and consider this evidence to the best of your ability and determine what, if anything, was the fair monetary value on July 1, 1959 of the Section 1378 right which defendant was granted by law when its farm was condemned.

It is your duty to consider and weigh all the evidence and determine the amount which will justly compensate the defendant for the property taken, in accordance with these instructions. It is my advice that the most reasonable approach to a solution of this problem is for you first to agree upon the fair market value of Citrus Valley Farm on July 1, 1959 as if it were then being sold by a willing seller to a willing buyer, both of whom had all the information affecting the value of the property which you now have. Having determined such fair market value, you then should consider and agree upon the monetary value, if any, established by a preponderance of the evidence, of the Section 1378 right retained by the defendant, and subtract such value from the fair market value of defendant's property. The difference should be the amount of your award as just compensation to the defendant."

the monetary value, if any, of the section 1378 right retained by the owner; and, finally, subtract the latter value from the market value of the land. To aid in carrying out this instruction the jury was directed to bring in a special verdict, disclosing their determinations on all of the pertinent items of value. The jury fixed the value of the land, including the allotment, at $1,025,000. It found that there was no value to the owner in the section 1378 right, and that the owner was entitled to fair compensation in the full amount of the land's value.

There are two basic questions before this court: (1) Were the lower court's instructions erroneous? (2) Was the verdict supported by the evidence?

 The Government contends the instructions were erroneous. Its argument is logically appealing and, upon its face, deceptively simple and persuasive. It is contended that the court has awarded compensation for more than the Government took; that by law the owner retains the allotment severed from the taken land, and yet, here, has received compensation for it as an appurtenance to the land. The Government reasons "the farmer can buy equivalent land with the award for the nonenhanced value because, by definition, it would be the same. Upon purchase by the displaced farmer, the land immediately assumes the enhanced value because of his ability, under section 1378, to transfer the allotment. The same would be true if he had to buy cheaper land and bring it up to capability, using the excess money from the award."

Further, the Government argues, the solution of the District Court has demonstrated its inadequacy to reach the question of fair compensation by the verdict's failure to give any consideration at all to an item of obvious value.

In our judgment the Government errs in viewing the allotment exclusively as a Government bestowed right which will automatically enhance the value of any lands to which it attaches in an amount precisely equal to its enhancement of the lands from which it was severed.

This view of the nature of the allotment overlooks the very basis for the allotment. It is based upon its land's productive history. It is more than a license to produce. In a very real sense it is a measure of the land's proven productive value.

The record is crowded with proof of the problems and expenses involved in converting raw desert land to a cotton farm. The raw land in this area normally is far too alkaline. It must be leached. This requires not only time, but water; and the quality of the water itself, with respect to its alkalinity, affects the success of the leaching and the degree to which it can be accomplished. The water level in the immediate area affects the cost of pumping which, in turn, bears directly upon the economic prospects of the farm. Clearly, it takes time and money and favorable characteristics of many sorts to create land upon which cotton can profitably be produced.

A cotton allotment severed from the farm which has earned it no longer represents proven productive merit and the ability to produce profitably. When attached to new land it does not automatically enhance that land to the extent of the value of the cotton-land characteristics of the land from which it was severed. Attached to new land it represents only its license-to-produce aspect. It proves nothing as to the productive ability of the land, for the new land did not create the history upon which the allotment was founded.

The Government's formula for evaluation would require the jury to pretend that productive cotton land was noncotton land. It would invite the jury to attribute to the retained allotment, enhancement values earned by the land from which it was severed—characteristics which the land retains and which cannot be severed by the owner and transferred to other land.

Thus an allotment attaching to lands which created the history upon which it was founded is a different creature from that same allotment transferred to new

lands as to whose productive history it proves nothing. The value of a license to produce on new lands has little, if any, relationship to the value to the taken land of its cotton-producing characteristics as demonstrated by its history.

The difference in value between the section 1378 right to produce on new lands and the value to the taken land of its cotton-producing characteristics is not to be regarded as damages to the property caused by the condemnation or as a cost of moving property from one site to another as the Government contends. Rather any difference in value between the section 1378 right as separated from the land and the value of the allotment when attached to the land is to be regarded as a part of the value of the property taken by the Government.

█ It was proper, then, to require the jury to fix the value of the section 1378 right separately. We find no error in the instructions as given.

█ The Government contends that there is no evidence to support the jury's finding that the right was of no value.

The value of that right, as the record abundantly shows, will depend on many factors: the availability of cotton land not presently enjoying an allotment; the availability of convertible non-cotton land; the cost and time required to convert such land to profitable production of cotton.

Certainly it is clear that a license to produce in accordance with this allotment is of no value unless and until cotton can profitably be produced; and until cotton profitably can be produced to the full extent of the allotment, the full potential value of the allotment is not realized. Furthermore, the right is personal to the owner. He cannot sell it. If he does not choose to use it, it is gone.

One approach to the question for the jury, then, was to ascertain what a willing buyer, faced with these many complex problems, would pay now for a right to produce in the future upon such lands as now were available. The Government's expert was asked, assuming that he had $1,000,000 to buy undeveloped lands in comparable areas, "You would give a long, deep, soul-searching look before you would even pay anything for this allotment, wouldn't you, in all fairness? A. In all fairness, I would take a long, searching look so I could make full use of this allotment and get the most out of it. Q. Before you would pay even $50,000 you would want to give it a lot of consideration and take a long look at the situation, wouldn't you? A. Yes, sir, I would."

Phrased another way the question could be said to be this: In the light of the potential profit to be made in Arizona cotton production, what would it be worth to this owner, armed with a million dollars in cash, to be able to use that fund, together with the allotment, to continue in cotton farming? The jury, in effect, has said that under the circumstances he would be as well off investing in other fields and engaging in other labors.

In our judgment the record does not so conclusively establish value in this right and the certainty of ultimate profit in the conversion of noncotton land as to eliminate all reasonable difference upon the question.

Judgment affirmed.

ROGER D. FOLEY, Jr., District Judge (concurring in the result).

The majority holds that whether a cotton allotment not taken in condemnation has value depends upon the facts of each case. The majority, here, finds that the evidence supports the jury's verdict of $1,025,000.00 and the jury's finding that the 550-acre cotton allotment was valueless.

While it seems clear from the evidence in this case that by growing cotton for several years upon the land in question, the value of the land was enhanced, the question of whether or not a cotton allotment considered apart from the land has value presents a difficult problem. However, for the reasons hereafter set forth,

I see no need to decide whether or not the cotton allotment, after severance, has value.

The majority quotes from the Government's brief, in part, as follows:

" 'In order to prevent the "marketing of excessive supplies of cotton" in interstate and foreign commerce and to "maintain an orderly flow of an adequate supply of cotton in such commerce," the cotton allotment system was established. 7 U.S.C. sec. 1341. Under it, the Secretary of Agriculture determines, upon the basis of estimated supply and demand for a particular year, whether there will be a quota of cotton for that year and, if so, what amount of acreage in the Nation will receive an allotment (sec. 1342).' "

Congress did not wish the taking of land by condemnation to either diminish total acreage allotted or to force the farmer out of business. To avoid these results, Congress provided the remedy set forth in Section 1378 of Title 7, United States Code.

I find no language in Section 1378 that indicates the intent of Congress that the increased value to the taken land, resulting from its proven history of cotton production, should not be a factor in determining the fair market value of the land. All that is not condemned, all that is severed, is the mere license to produce cotton in the future on the taken land. But just compensation to Appellee must be the fair market value of its land, which includes its proven history of cotton production. There is reliable evidence here that cotton farming is the highest and best use to which the land involved could be put.

There is no justification for implying Congressional intent that the value to the land of such history of production shall not be considered in a condemnation case simply because the allotment is severed at the time of taking.

The Government's theory shocks one's sense of justice. An unjust result can never be the right result. If the enhancement in the value of the farm, resulting from its cotton production, is not to be considered in arriving at its fair market value, then the jury would be required to fix the value of land different from the land taken. Appellee is entitled to receive just compensation for its land at the time of taking, not other land or the same land without its history of production.

In Iriarte v. United States, 157 F.2d 105, 1 Cir., 1946, at page 111, 167 A.L.R. 494, the Court stated, in part:

"[A]n increment added to the value of land by a governmental policy is not to be deducted from the fair market value of land condemned in order to arrive at the amount of the just compensation which must be paid therefor. * * * For instance it would obviously be impossible as a practical matter to deduct from the fair market value of agricultural land all elements of its value due to the Government's agricultural policy.

* * *

"But before any governmental policy can be considered as affecting the market value of property, there must be evidence to indicate that the existence of that policy would be taken into consideration by the willing buyer and the willing seller whose bargain is the test of value."

According to the evidence in this case, both a willing buyer and seller would, in negotiating for a sale of Appellee's land, consider the land's cotton-producing history.

In my view, no deduction of the value of the allotment apart from the land should have been considered by the jury, but I would not reverse because the jury reached the right results. The jury properly fixed the value of the land and the judgment should be affirmed.