454 P.2d 188

David RICH and Albert Horwitch, dba Eloy Farms, and David Rich and Albert Horwitch dba Toltec Farms, Appellants,

v.

Kirby HUGHES and Edith Hughes, his wife, Appellees.

No. 2 CA–CIV 634.

Court of Appeals of Arizona.

May 7, 1969.

Rehearing Denied June 11, 1969.

Review Denied July 8, 1969.

Brown, Vlassis & Bain, by George P. Vlassis and George E. Hilty, Phoenix, for appellants.

Donald C. Cox, Eloy, for appellees.

KRUCKER, Judge.

Appellants, plaintiffs, David Rich and Albert Horwitch, doing business as Eloy and Toltec Farms, sued defendants, appellees, Kirby and Edith Hughes, husband and wife, their former tenants, for missing farm equipment and for acres of cotton planted but not paid for. The Hughes counterclaimed for wrongful termination of their lease and for amounts due on two promissory notes from Rich. The court, sitting without a jury, allowed the claims for missing equipment and for some additional rent, excluding acreage planted on property off the two farms by virtue of the combining of cotton allotments. The court dismissed the unlawful termination of the lease and allowed setoff for one, dismissing without prejudice the other note. Plaintiffs appeal solely on the issue of whether rent is due from the acres planted off the farms as a result of combining cotton allotments.

Pursuant to the Agricultural Adjustment Act § 341 (1938), 52 Stat. 55, 7 U.S.C.A. § 1341 (1964), cotton quotas are set by the Government subject to farmer rejection. When a national quota is set, it is then apportioned to the States, and by them to their counties and farms. Penalties are imposed on farmers who exceed their allotment. To preserve the allotment, a farmer must use seventy-five percent of it in fact. To solve the dilemma of lands which are under-allotted, vis-a-vis their ability to use their quota, with lands which are over-allotted, farmers are allowed to "combine" farms. Thus, a one hundred acre allotment farm, if combined with a two hundred acre allotment farm, will yield one farm with a three hundred acre allotment. The farmer may then divide up his two planting areas as water supply, equipment or the demands of crop rotation require, in order to maximize the allotment use. Allotments at the time of this case could generally not be transferred apart from the land.[1]

The Eloy farm had an allotment of approximately 800 acres and the Toltec farm 500 acres. Neither had sufficient water to farm the full allotment. The lease covering the two farms had three sections significant to this case. First, the lease set minimum acreage requirements of 550 acres on Eloy and 350 acres on Toltec, and any acres planted over that amount would cost $50 an acre. (These minimums were not quite the 75 percent needed to preserve the quota.) Second, the lease required defendant to protect the allotment, or use 75 percent of it. Third, the lease contained the following covenant:

"* * * Lessees further covenant and agree that they will not sublease, assign, transfer or set over all or any portion of the cotton allotment to any other lands other than the demised lands herein, without written approval first had and obtained from Lessor."

The trial court found that due to the combining of the two leased farms with defendants' own farms, some (196.4) acres of the Eloy farm allotment and (164.4) acres of the Toltec farm allotment were used on defendants' own farms. The question on appeal is whether the cotton allotment clause "not to transfer" refers to the use of such combined acreage allotment. If it

---

1. A land owner whose land was condemned was allowed to transfer his cotton allotment to new farming land.

was a combination or transfer, did the failure to get permission to so combine allow plaintiff rent of $50 an acre for those combined acres planted on defendants' own land?

Plaintiffs argue that the covenant not to assign, transfer, set over or sublease is meaningless unless construed to include combination because one could not legally "transfer" cotton allotments at this time. They point to the custom of some farmers to interchangeably use "combine" and "transfer" when referring to cotton allotments. In particular, they point to plaintiff's admission that he had contemplated the tenant would combine.

The trial court found:

1. The lease called for $50 of rent for each acre farmed in excess of 550 on Eloy and 350 on Toltec farms.

2. The tenant planted excess on the two farms for which they owe back rent.

3. The tenant agreed to not injure the allotment and he did not do so.

4. The defendants did not sublease, assign, or transfer any portion of the cotton allotment in violation of the lease.

By deduction, the trial court denied rent for acres planted off the leased farms which resulted from combining allotments.

▪▪ The interpretation of a lease requires a careful look at the intention of the parties and of the instrument as a whole. General Accident Fire & Life Assurance Corp. v. Traders Furniture Co., 1 Ariz.App. 203, 401 P.2d 157 (1965). In this agreement there are the three basic provisions: the rental agreement, the cotton allotment clause not to transfer, and the covenant not to injure the allotment. The rules of construction are that they be read to give each a meaning which is harmonious with the others. Alabam Freight Lines v. Stewart, 70 Ariz. 140, 217 P.2d 586 (1950).

A harmonious reading of the three provisions was made by the trial court and we agree.

Regardless of whether the prohibition of the lease against "transfer" of the cotton allotment applied to this transaction, we believe the judgment below to be a correct one.

▪ This lease did not provide that rent for use of the allotment on outside land was to be paid for. The provision expressly refers to the rent of acreage planted on "the demised land." Therefore, plaintiff is not entitled to rent for those acres planted outside the farms. He is entitled to whatever damages he can show resulted from the failure to get permission to use the allotment outside the farms. He showed none.

The plaintiffs maintain that the permission clause was to assure them of payment of the $50 in advance of allowing the planting. This runs straight in conflict with the rental provision, which limits rent to "demised land." Plaintiffs contend that denying them such rent would allow a lessee to pay minimum rent and then take the rest of the allotment without paying but a fraction of its value. However, the parties agreed here to plant what they considered at the time to be the maximum amount possible on the farms first and thus in no way would the lessee take from the farm land the maximum allotment it could utilize. Plaintiffs argue that the allotment's use on outside lands, even though the limit of the usable quota on the farms has been utilized, has a value of $50 per acre. This logic has been discussed in two Arizona cases in regards to placing values for condemnation purposes. United States v. Citrus Valley Farms, Inc., 350 F.2d 683 (9th Cir. 1965); United States v. 3,296.82 Acres of Land, More or Less, In Maricopa County, Arizona, 222 F.Supp. 173 (D.Ariz.1963).

The decisions indicate that an allotment alone may not have value. Its value is totally contingent on the land to which it is attached. In fact, land with a cotton allotment which has a high value can more appropriately be considered a measure of the land itself; the more productive is the land the more valuable is the land and allotment

together. Therefore, the measure of damages is as indicated, harm proven from failure to get permission. There is no proof or even contention made that the lessees could have grown any more cotton in the demised premises.

■■ Plaintiffs' second claim is that if no rent for the cotton allotment can be found within the terms of the lease, it should be allowed under the doctrine of unjust enrichment. The Restatement of Restitution § 157 provides that a person must pay another for use of property received by him as will be just in view of the fault of either, if any. *See*, Paar v. City of Prescott, Arizona, 59 Ariz. 497, 130 P.2d 40 (1942). Section 155 indicates clearly that a lack of fault will not negate the duty to pay. However, it has long been the rule that, minus fraud, etc., the law will imply an agreement on the part of the tenant to pay the reasonable value for his use and occupation of land only in the absence of an agreement indicating a contrary intent. *Expressum Facit Cessare Tacitum.* 52 C.J.S. Landlord and Tenant § 466; 32 Am.Jur. Landlord and Tenant § 430; Carpenter v. United States, 17 Wall. 489, 21 L.Ed. 680 (1873). In this case the lease having set forth rental terms which have been upheld, the parties cannot now be heard to seek additional rent.

The case of Walton v. Bufkin, La.App., 135 So.2d 309 (2d Cir. 1961), cited by plaintiff as authority for unjust enrichment, involved a fraudulent and disproportionate allocation of the allotment to lessee's own land. The court allowed recovery for the amount of acreage which could have been raised on the landlord's property had a proportionate amount of the allotment been so planted. In the instant case there was no disproportionate division of the allotment nor fraud, and the lease clearly required a full use of the two farms and set rent therefor.

A more appropriate case for analysis is Harnish v. Shannon, 392 Pa. 419, 141 A.2d 347 (1958). A landlord and tenant entered a lease of all mineable coal in a certain tract of land. The landlord was entitled to eight cents per ton of coal "mined and shipped" from the premises. The tenant, however, by the lease, had no obligation to mine, but was given broad powers to assign or sublease the lease. The hope apparently was he would provide the negotiating expertise to obtain subleasing and thus large mining from the land. No such subleases were made. The tenant however, subleased the mining interest for on the premises coal consumption and rent was paid to the sublessor regardless of any mining. The landlord attempted to get his share of that rent, but the court held his agreement in writing was limited to rent for coal *mined* and *shipped* and not for simple use of the coal interest. They concluded that simply because the tenant had reaped a benefit from the lease did not mean the landlord was entitled to a share.

The court went on to also dismiss a request that a constructive trust be imposed over the rents from the sublessee to the tenant. The court denied their request saying:

"By its terms they agreed to look to their lessees and their assigns for payment of their royalties as and when the coal might be mined and shipped. Their own covenant is their security. *It is all they provided for and the court in the exercise of its equitable powers may not increase it.*

We conclude that in a suit by the plaintiffs (landlords) against the defendants (lessees), *the rights and obligations of the parties are determined by the provisions of their own lease-contract*, and, under a covenant providing for payment of royalties only after coal is mined and shipped, the plaintiffs may not enforce payment until the coal is mined and shipped." (Emphasis supplied)

Judgment affirmed.

MOLLOY, C. J., and HATHAWAY, J., concur.