[Civil No. 3469.  Filed December 31, 1934.]

[39 Pac. (2d) 626.]

ARIZONA ASSOCIATION OF CREDIT MEN, an Arizona Corporation, and LYLE N. OWENS and J. L. VANCE, Doing Business Under the Firm Name and Style of OWENS RADIATOR AND BODY WORKS, and OWENS RADIATOR AND BODY COMPANY, Appellants, v. ASSOCIATED INDEMNITY CORPORATION, a Corporation, Appellee.

Messrs. Windes & Miller, for Appellants.

Mr. E. H. Karz (Mr. Wm. C. Fields, of Counsel), for Appellee.

LOCKWOOD, J.—This is an action by Associated Indemnity Corporation, a corporation, hereinafter called plaintiff, against Arizona Association of Credit Men, an Arizona corporation, hereinafter called the association, and Lyle N. Owens and J. L. Vance, doing business under the firm name and style of Owens Radiator & Body Works, to recover from the defendants the amount due plaintiff as premium upon a policy issued by it to the Owens Radiator & Body Company, Inc., hereinafter called the company, under the provisions of the Workmen's Compensation Act (Rev. Code 1928, § 1391 et seq.). The case was tried before the court without a jury, and judgment was rendered in favor of plaintiff and against all the defendants in accordance with the prayer of the complaint. From such judgment and the order overruling the motion for new trial this appeal is taken.

The general principle of law on which plaintiff bases its claim is not in dispute; it being that, when a trustee incurs an indebtedness on account of the estate for which he is trustee, he is personally liable for the debt (*Taylor* v. *Mayo, Admx.,* 110 U. S. 330, 4 Sup. Ct. 147, 28 L. Ed. 163; *Carr* v. *Leahy,* 217 Mass. 438, 105 N. E. 445), unless at the time it was incurred he expressly and to the knowledge of the creditor limited it to be paid only out of the trust estate (*Feldman* v. *Preston,* 194 Mich. 352, 160 N. W. 655). The real question is whether the defendants herein were trustees of an express trust of the nature affected by the rule when the contract for the purchase of the policy above referred to was entered into. This depends, of course, upon the facts of the case. We have carefully read and compared the voluminous testimony found in the reporter's transcript, and are of the opinion that, taken in the strongest manner in favor of plaintiff's theory of the

case, as under the judgment of the trial court we must take it, the facts necessary for a determination of the matter may be stated as follows:

In 1929 the Owens Radiator & Body Works, a domestic corporation, hereinafter called the company, was engaged in the general business of automobile repairing at 209 East Van Buren Street in the city of Phoenix and was operating as a going concern. Practically all of the stock of the company was owned by Jimmie Owens, who was its president and general manager and who devoted all of his time to its affairs. On that date the company was heavily indebted on various accounts, many of which were overdue. A number of its creditors were dissatisfied with the way in which Owens managed the business, believing him to be a most excellent shop foreman but a very poor business man, and were about to take legal steps to enforce their claims. At the same time there existed in Phoenix a voluntary unincorporated association, known as the Arizona Association of Credit Men; it and its incorporated successor being hereinafter called the association. This association had as members a large number of individuals, firms and corporations engaged in various businesses in and near the city of Phoenix, and the general nature of the business of the association was the gathering and distribution of credit information to its members, and assisting them in every possible legal manner in the collection of debts due them. It had a president and a board of directors and various other officials, but its principal active officer was its secretary-manager who, generally speaking, did whatever in his discretion he thought necessary for the carrying out of the purposes of the association, subject, however, to review by the board of directors. This had been the custom of the association since its organization, and its board of directors had tacitly if not expressly

approved thereof, and on February 14, 1929, one C. W. Lindsley was its secretary-manager. On that date Jimmie Owens was called into consultation with a number of the creditors at the office of the association, Lindsley being present, and was told that he would have to make an assignment of his business or that some more drastic legal steps would be taken. He immediately assented thereto, with the understanding that he was to be retained as shop foreman in charge of the actual work of the shop, but that the office end of the business, including the giving of credit and the disposal of the funds collected for the work done in the shop, would be handled by the assignee, and the proceeds distributed by the association to his creditors. Thereupon he on behalf of the company executed a written assignment of the business to Lindsley who, as we have stated, was at the time the secretary-manager of the association. This assignment was a common-law and not a statutory one. Lindsley did not personally take over the business of the assignor, but turned it over to a man named Smith, who from that time on until some time in the fall of the same year took entire charge of the business; all employees, including Owens, being paid by check of the company, drawn by Smith and countersigned by Lindsley. Owens from time to time made suggestions to Smith and Lindsley as to the running of the business, but assumed no control over it. From time to time, as the business showed a profit, checks were sent to the association to be distributed by it to the creditors of the company, and it also received for a year or more $30 per month, presumably for its services in connection with the transaction.

Some time in the fall of 1929 Lindsley severed his connection with the association and left the state of Arizona, and about the same time it was changed from a voluntary association to one incorporated, and

defendant J. L. Vance apparently took Lindsley's place as secretary-manager. Among its corporate powers was expressly included the right to act as assignee or trustee on behalf of its members. For some reason and in some manner one Clark was then put in charge of the management of the company, instead of Smith, and business continued for a time under him. No new assignee was formally appointed nor was the assignment made to Lindsley revoked. The association, acting through Vance, its new secretary-manager, with the acquiescence of Owens and all his creditors, apparently stepped into place formerly occupied by Lindsley, but without any specific written directions from anyone authorizing it so to do. Clark was drawing a salary at that time of $250 per month with one Rohorbacker acting as bookkeeper under him; the latter having been for several months in the past bookkeeper under Smith, and before the assignment under the company. A number of the principal creditors of the company, together with Jimmie Owens, got together some time in the fall of 1929 and came to the conclusion that Rohorbacker alone could handle the work which had been done by himself, Smith, and Clark and save some $250 per month expenses. The record is somewhat indefinite as to by whose specific authority Clark was discharged and Rohorbacker placed in charge of the office, but the latter made regular reports as to the condition of the business to defendant Vance, who was then secretary-manager of the association, and all moneys paid out were on checks countersigned by Vance or someone on behalf of the association.

In January, 1930, it became necessary for the company, in order to comply with the law in regard to workmen's compensation, to take insurance either with the Industrial Commission or some private company authorized to issue compensation insurance.

The local agent for plaintiff endeavored at first to sell the policy in question to Jimmie Owens. The latter referred him to Rohorbacker, who, after going over the situation, ordered the policy issued on behalf of the company, and paid the first deposit premium thereon by a check of the company signed by himself and countersigned by J. L. Vance on behalf of the association. It is the custom of insurance companies issuing this class of insurance policies to require a down payment when the policy is issued, and there-after either monthly, quarterly or annually, as the case may be, payments based upon the pay-roll of the insured as it varies from time to time should be made.

There is no dispute that under the terms of the policy there is now due to the plaintiff the amount which it sued for; the only question being from whom it is entitled to collect the money. There was a large amount of evidence introduced as to various transactions of the parties after the policy was issued, but the great bulk of this was admissible only on account of its bearing on the question as to whether or not at the time the policy was taken out the defendants were in the position of assignees in charge of the company's business, and so liable for the indebtedness which accrued by reason of the contract of insurance. The original assignment, as we have seen, was made to Lindsley. But while in form it was to Lindsley, we think there can be no doubt that the evidence shows what the trial judge must necessarily have found to sustain the judgment, to wit, that it was merely formally to him, and that the association, acting in the interests of some of its members, was the equitable assignee; Lindsley merely being its hired agent. Notwithstanding this, had Lindsley remained in active control of the company's business under the assignment, it is perhaps true that in the eyes of the

law he would be the legal assignee and the responsible party. But he left the scene of action long before the policy in question was taken out. Thereafter he had no legal successor, either formally appointed by a court which had jurisdiction, or chosen by the written agreement of the parties. The association voluntarily and with the acquiescence of everyone concerned stepped in and took charge of the business through its secretary-manager, Vance, and all of the parties concerned assumed that its orders in regard to the conduct of the business were final. It received compensation for its services as such, in addition to the salaries paid to its servants and appointees who performed the actual work in the management of the company. It had knowledge, through its secretary-manager's countersigning of checks, that the policy had been bought, and it took no steps to order it canceled. Under these circumstances we are of the opinion that, regardless of the technical name which should be given to its position, whether *de jure* or *de facto* assignee, or even assignee *de son tort,* it was responsible for its acts as a trustee of an express trust, having voluntarily stepped into the shoes of and assumed the authority and liability of Lindsley, to whom the original assignment was made. Such being the case, under the law it was responsible to plaintiff for the amount due the latter under the contract of insurance.

We think, however, that Lyle N. Owens and J. L. Vance cannot be held individually responsible. They were unquestionably acting only for and as employees of the incorporated association, and Lyle N. Owens did not even become its secretary-manager until long after the contract of insurance had been made. For these reasons the trial court should not have rendered judgment as against them individually.

The judgment of the trial court as against the Arizona Association of Credit Men, a corporation, is affirmed, and is reversed as against Lyle N. Owens and J. L. Vance, and remanded as to them to the superior court, with instructions to render judgment in their favor.

ROSS, C. J., and McALISTER, J., concur.