313 P.2d 393

EMPLOYER'S LIABILITY ASSURANCE CORPORATION, Ltd., a corporation, John H. Barr, John H. Barr Marketing Company, and Tom Barr, Appellants,

v.

Heaton LUNT and Virgil Lunt, copartners dba Heaton Lunt & Son, Appellees.

No. 6152.

Supreme Court of Arizona.

June 18, 1957.

Jennings, Strouss, Salmon & Trask and Roderic M. Jennings, Phoenix, for appellant Employer's Liability Assur. Corp.

Jerman & Jerman, and Charles E. Butler, Phoenix, for appellants John H. Barr, John H. Barr Marketing Co. and Tom Barr.

Anderson & Smith, Safford, for appellees.

STRUCKMEYER, Justice.

The action originated as a suit against the John H. Barr Marketing Company, a corporation, John H. Barr and Tom Barr, as the alter ego thereof, and the Employer's Liability Assurance Corporation, Ltd., as its surety, for the sum of $1,938, being the unpaid balance on the purchase price of 1,200 sacks of onions. Judgment was rendered against all of the above-named parties, and all have appealed except the Marketing Company, which is insolvent. The questions here involve the liability of the respective appealing parties for this debt.

■ John H. Barr and Tom Barr urge by their appeal that the court erroneously determined they were the alter ego of the Marketing Company and erroneously disregarded the corporate entity in rendering judgment against them for the corporate debt. We first observe that a corporation is organized as a legal entity to do business in its own right and on its own credit as distinct from the credit of its officers and stockholders. The two appellants, John H. and Tom Barr, are not, of course, personally liable for the corporate debts simply by reason of being officers of the Market-

ing Company, Arizona Association of Credit Men v. Associated Indemnity Corporation, 44 Ariz. 548, 39 P.2d 626. That a few individuals own the stock of the corporation or control its actions does not mean necessarily that the debts of the corporation should be imposed upon them personally, Home Builders & Suppliers v. Timberman, 75 Ariz. 337, 256 P.2d 716; Cooper v. Industrial Commission, 74 Ariz. 351, 249 P.2d 142. Were the rule otherwise, it would often defeat the purpose of incorporation and tend to destroy the corporate form as a method of doing business.

■ The corporate fiction will, however, be disregarded upon the concurrence of two circumstances; that is, when the corporation is, in fact, the alter ego of one or a few individuals and when the observance of the corporate form would sanction a fraud or promote injustice. Whipple v. Industrial Commission, 59 Ariz. 1, 121 P.2d 876; Walker v. Southwest Mines Development Co., 52 Ariz. 403, 81 P.2d 90; Gonzales & Co., Brokers v. Thomas, 42 Ariz. 308, 25 P.2d 552; Mosher v. Lee, 32 Ariz. 560, 261 P. 35; Phoenix Safety Investment Co. v. James, 28 Ariz. 514, 237 P. 958; Rice v. Sanger Bros., 27 Ariz. 15, 229 P. 397. The disregard of the corporate fiction has not been limited to instances where the incorporation is for fraudulent purposes, but may be observed if after organization the corporation is employed for fraudulent purposes. Stark v. Coker, 20 Cal.2d 839,

129 P.2d 390; Advertects, Inc., v. Sawyer Industries, Fla., 84 So.2d 21; Whitney v. Leighton, 225 Minn. 1, 30 N.W.2d 329.

■ In the instant case, it is undisputed that John H. Barr engaged in the business of marketing farm products, both as an individual, and as a partnership with others, prior to February, 1950. At or shortly after that time, the Marketing Company was organized. It continued in business until its affairs were terminated by insolvency in the latter part of September, 1951. John H. Barr was issued ten shares of the corporate stock; his wife, Ida, fifty shares; and his son, Tom, one hundred forty shares. Raymond Homeyer was issued one share. The three Barrs were the principal officers, directors and stockholders of the corporation. They controlled the corporation's assets and its operations. The business engaged in by the corporation was the same business that John H. Barr had conducted prior to incorporation. Its area of operation, office location, office equipment, Post Office address and telephone number were identical. That the Barr family was the alter ego of the Marketing Company is so obvious that it cannot be a matter of serious dispute.

The Barr appellants urge that there was not sufficient evidence of fraud to justify the trial court's looking through the corporate fiction and holding them personally liable for the corporate debt. There was evidence that the Marketing Company, at the time of its formation in April of 1950, had assets of approximately $20,000, but that at the time of the termination of its business activities in September of 1951, just three weeks prior to the purchase of the onions from appellees, its liabilities exceeded its assets, for it was acknowledged that the officers personally paid the utility bills in order to continue operations. The onions, out of which this debt arose, were resold at a profit, but the money obtained from that sale was not used to pay the Lunt indebtedness. While the Marketing Company had purchased produce from appellees prior to the transaction involved here, those purchases had always been paid within a day or two. There was no discussion of the time of payment for the onions in this particular sale; apparently the Lunts relied on the prior practice. The Lunt sales were explained by the appellant Tom Barr to be what he called "cash sales, they were sold to us on open account." From the facts just recited the trial Judge could have drawn the conclusions that at the time of purchase the Marketing Company was insolvent and known to be insolvent to its officers and that appellants did not intend to pay for merchandise at the time of purchase.

■■ In this jurisdiction it is settled that a fraud may be perpetrated by the giving of a promise to perform a future act made with the present intention not to per-

form. Waddell v. White, 56 Ariz. 420, 108 P.2d 565; Law v. Sidney, 47 Ariz. 1, 53 P.2d 64. It also seems to be accepted that a buyer's nondisclosure of insolvency constitutes fraud where it is coupled with an intent not to pay for the goods.

"Starting with Donaldson v. Farwell, 93 U.S. 631, 23 L.Ed. 993, it has been settled by a number of decisions in federal courts that it is a fraud for an insolvent, concealing his condition, to buy goods, for which he does not mean to pay. * * *" California Conserving Co. v. D'Avanzo, 2 Cir., 62 F.2d 528, 530.

■ The gist of the fraud here complained of is not in the breach of the agreement to perform, but in the implied representation of an existing intent to perform where such intent is, in fact, nonexistent, 23 Am.Jur. 887. The intent not to perform can be inferred from the fact that having resold the onions at a profit within a few days and having the means available to pay this debt, no attempt was made to apply the proceeds to the extinguishment thereof. The record does not reflect any reason for the Barrs to believe that the Marketing Company could be expected to pay for these onions except out of the funds acquired by their resale.

The Employer's Liability Assurance Corporation, as surety for the Marketing Company, has appealed from the judgment against it on the ground that the transaction out of which the debt arises is not within the scope of the surety's obligation. The appellees urge to the contrary that the Assurance Corporation is liable both by reason of the Arizona statute and the specific terms of the bond. This divergence of views requires a detailed consideration of both the Arizona Fruit and Vegetable Standardization Act, sections 3–481 through 3–523, A.R.S. 1956, and the written instrument upon which liability is sought to be predicated.

Section 3–481 of the Act defines a commission merchant as a person who receives on consignment for sale or accepts any farm products in trust for resale; an agent as a person who on behalf of a commission merchant contracts for or negotiates the consignment or purchase, except for cash on delivery, of any farm product; a dealer as a person engaged in the business of buying and selling any farm product, except at retail; a grower-shipper as a person engaged in transporting or selling agricultural products of which he is the producer or owner; a packer as a person engaged in harvesting or packing farm products.

Although the Act requires that those engaging in the foregoing-enumerated businesses first obtain a license from the Supervisor of Inspection, only commission merchants, agents and packers are required to be bonded for the faithful and honest handling of farm products. Section 3–493.

The Act does not require a bond for that purpose from a grower-shipper or dealer. All parties hereto concede that the Marketing Company was acting within the statutory definition of a dealer in this transaction in that it bought the onions for resale not at retail and that Section 3–498, subd. C., was violated since the Marketing Company as a dealer did not pay for the produce within thirty days from date of delivery.

It is true that where a bond is given under the authority of a statute, the statute constitutes a part of the bond, Porter v. Eyer, 80 Ariz. 169, 294 P.2d 661; Commercial Standard Insurance Co. v. West, 74 Ariz. 359, 249 P.2d 830; and this bond was given pursuant to the requirements of the Arizona Fruit and Vegetable Standardization Act. But since the statute does not require a bond of a dealer, no statutory right of action can accrue in favor of a person injured by a dealer's violation of the Act. Where, as here, a bond is given in compliance with a statute to secure performance of the obligations and duties of commission merchants, or agents, the liability imposed by law cannot include violations of the statutory duties of dealers, for the bond must be given the effect which in reason must have been intended by the statute, Regan v. O'Steen, 47 Ariz. 87, 53 P.2d 861.

It is appellees' further contention that if the statute requiring a bond of commission merchants, agents or packers cannot be construed to secure the acts of a dealer, the surety is still liable by reason of the express words contained in the bond. The bond itself is a printed form entitled "Produce Dealers Bond." While the use of the words "Produce Dealers" superficially suggests that the bond was written to cover the transactions of a "dealer" as defined in the Act, the term has an obvious extensional meaning descriptive of a class of bonds categorically containing all those dealing in farm products. In this instance the class may or may not include dealers as defined by the Act, dependent upon the intention of the parties. It is, of course, the fundamental rule of construction that the court must ascertain and give effect to the intention of the parties as of the time the contract was made if at all possible. Henderson v. Jacobs, 73 Ariz. 195, 239 P.2d 1082; Fagerberg v. Phoenix Flour Mills Co., 50 Ariz. 227, 71 P.2d 1022; Neale v. Hinchcliffe, 21 Ariz. 452, 189 P. 1116. An ambiguous term such as this (susceptible of two possible meanings) cannot be used as an aid in determining the intention of the parties. Rather it is the intention of the parties that must be ascertained in order to find the true meaning of the term. The character of a contract must be determined by its provisions rather than its label.

Russell v. Golden Rule Min. Co., ·63 Ariz. 11, 159 P.2d 776.

The bond itself is conditioned in the following language:

"The Condition of the above obligation is such: Whereas the above named principal has made application to the Supervisor of Inspection *for a license to act as a commission merchant or agent* within the meaning of the Arizona Fruit and Vegetable Standardization Act and acts amendatory thereto and *is required by the provisions of said acts* to furnish a bond in the sum named above, *conditioned as therein set forth.*" * * * (Italics ours.)

Were this the only provision of the bond to be considered, it would be plain that it was given solely in compliance with the statute to secure the acts of commission merchants and agents, but it is argued that the operative portion of the bond is broad enough to include all of the acts required by statute of those licensed as a dealer. The operative clause reads:

"In the event that any person licensed under the provisions of said act shall willfully or negligently fail to comply with the provisions or regulations of said act * * * any person injured by such violation shall have a right of action based thereon under this bond."

Appellees rely on the holding in Jamison v. Franklin Life Insurance Co., 60 Ariz. 308, 136 P.2d 265, to the effect that if both the recital and the operative clause are clear but inconsistent with each other, the operative part is to be preferred. We recognize the Jamison case as the law; however, we point out that the rule stated therein is but an arbitrary device adopted of necessity where the intention of the parties cannot otherwise be fairly determined and is to be applied only as a last resort. Where the intention can be determined from the entire instrument, the contract is to be construed as a whole. Hamberlin v. Townsend, 76 Ariz. 191, 261 P.2d 1003; Daily Mines Co. v. Control Mines, Inc., 59 Ariz. 138, 124 P.2d 324. It is the duty of the court to adopt that construction of a contract which will harmonize all of its parts, and apparently conflicting provisions must be reconciled, if possible by any reasonable interpretation, Smith Stage Co. v. Eckert, 21 Ariz. 28, 184 P. 1001.

It is our view that the recital and the operative portion of this bond are not necessarily inconsistent, for the operative clause, when examined in the light of the plain limitation of the recital, can be reconciled therewith. The recital states the purpose in executing the instrument. In substance it relates that the John H. Barr Marketing Company has applied for a

license as a commission merchant or agent and is required to furnish a bond as such commission merchant or agent conditioned as provided in the Act. The Act, by Section 3-493, provides that the bond of a commission merchant or agent is for the use and benefit of "any consignor of farm products." The language of the operative portion of the bond, if taken literally, would seem to extend the liability on the bond to "any person injured" by a violation of the Act, but the Act itself confines the liability to persons in the class of consignors. We are, therefore, of the opinion that "any person injured" must be construed to mean "any consignor of farm products" because they are the only persons who, under the specific language of the Act, can be injured by the defaults of commission merchants or agents. For the same reason, where in the operative clause it is provided that in the event "any person licensed" under the provisions of the Act shall default, the "any person licensed" must be confined to those persons, namely, commission merchants or agents, whose defaults were plainly intended to be covered in the recital.

We are of the opinion the construction that has herein been placed on the bond is correct for the following reasons: First, by it all of the language used becomes consistent and compatible and all portions of the bond are given some significance. Were it otherwise, we would be required to delete from the bond an entire paragraph, treating such paragragh as if it had no purpose in this contract. We think that such a stringent operation on the written agreement of the parties could be justified only as a last resort where necessary to breathe life into an instrument that would otherwise be void for uncertainty. Second, we note that there is printed on the bond the statement, "This Bond Approved as to Form by the Attorney General of the State of Arizona." If the bond were, in fact, intended to be more than the bond required by statute, the Attorney General quite obviously would have no interest in either approving or disapproving it. Third, if the language of the operative clause is not to be construed so as to harmonize with the recital, then we would somewhere have to find that the surety intended to be responsible for all of the negligent and wrongful conduct of the John H. Barr Marketing Company arising out of any transaction, not only as a commission merchant or agent, but as a dealer, grower-shipper and packer, for as has been pointed out, they likewise are required to be licensed. An interpretation which gives a reasonable meaning to all manifestations of intention is preferred to an interpretation which leaves a part of such manifestations unreasonable, Tyson v. Tyson, 61 Ariz. 329, 149 P.2d 674.

For the foregoing reasons the judgment of the court below is affirmed as to John H. and Tom Barr, but reversed with directions that judgment be entered in favor of the Employer's Liability Assurance Corporation, Ltd.

UDALL, C. J., and WINDES, PHELPS and LA PRADE, JJ., concur.