Richard S. Heller, J.
These two claims arose from the appropriation for highway purposes of the fee to a strip of land approximately 14 feet in width and 286 feet in length and a temporary easement immediately contiguous to the fee appropriated approximately 10 feet in width and 284 feet in length. The property appropriated was located on the south side of Main Street in Gouverneur, New York, and the appropriations were for the purpose of widening Main Street which is New York State Route No. 11.
The title to the appropriated property vested in the State on April 30,1956, on which date the maps and descriptions were filed in the office of the Clerk of St. Lawrence County. Claimants were served on October 23, 1956. The claim by Esso Standard Oil Company was filed on August 16, 1956, and the claim by Kaplan’s Realty Co., Inc., was filed on October 9, 1956. The court has viewed the property.
At the time of the taking Kaplan’s Realty Co., Inc., owned a plot of land situate at the southwest corner of Main Street and Gordon Street in the Village of Gouverneur. The plot had a frontage of about 286 feet on Main Street and a frontage on Gordon Street of about 290 feet. It contained a total area of about 68,600 square feet.
Kaplan’s land was almost in the center of the business and commercial district of the village and the entire block in which the property is located was zoned for business, industrial and manufacturing use. The property was unimproved except for a gasoline station located at the northwest corner of the property and an old brick dwelling located about the center of the plot on its east-west dimension approximately 80 feet south of Main Street. This brick dwelling was badly deteriorated and had been vacant for some time.
The gasoline station had been erected by Esso Standard Oil Company in 1952 pursuant to a lease between the claimants of a plot having a 100-foot frontage on Main Street, a 100-foot depth and a width along the south line of 90 feet. At the time of the lease the entire plot sloped upward from the grade at Main Street to the southeast so that at the southwest corner of the plot leased to Esso the property was approximately 5 feet above grade and at the southeast corner it was approximately 8 feet above grade. The balance of the plot from about 100 feet south of Main Street was 8 to 10 feet above the grade of Main Street.
Esso Standard Oil Company graded the plot which it had leased to a depth of approximately 75 feet. It erected a two-bay *526 gas station building approximately 41 feet in length and 28 feet in depth set back from the street line about 43 feet. The graded area in front of the building was blacktopped and a gasoline pump island installed. The total cost of the improvements to the real property was $24,700.
At the time of the taking the plot leased by Esso Standard Oil Company had been leased by it to an operator for a term of one year commencing March 1, 1956 at a rental of 1% cents for each gallon of gasoline and other motor fuel sold, with a minimum rental of $1,800 per year. Esso Standard Oil Company paid all real estate taxes which amounted to approximately $350 per year. From July, 1955 to March 1, 1956 Esso had leased the property to another operator on the same terms.
Employees of Esso Standard Oil Company testified that the property had originally been leased from Kaplan’s Realty Co., Inc., and the improvements erected on the basis of estimated annual sales of gasoline of 200,000 gallons which it estimated, based upon its experience, would be reached in three years. In the year 1955,102,000 gallons of gasoline or motor fuel were sold from the station. In the first four months of 1956 there was an increase in sales of approximately 40% over the same four months of the year 1955. One of the employees of Esso Standard Oil Company testified that for the last 17 years of the lease it was estimated that a total of 3,000,000 gallons, or approximately 176,400 gallons per year, of gasoline would be sold from this station.
Following the commencement of construction of the St. Lawrence Seaway in 1954 there had been a substantial increase in traffic on Main Street as a part of Route 11. Route 11 was the most direct automobile route from Syracuse and Watertown to Massena where a great part of the St. Lawrence Seaway construction activity was concentrated.
The basic factors governing compensation for the appropriation of real property are not affected by the diversity of interests in a plot subject to appropriation. Where only a portion of a plot is taken, compensation for the injury is determined by the difference between the fair market value of the entire property at the time of the taking and the fair market value of the remainder after the needed portion has been appropriated. (Matter of City of Rochester [Smith St. Bridge], 234 App. Div. 583, 586-587 and cases there cited.)
The appropriation here affected two distinct types of property, one being an unimproved plot containing approximately 61,000 square feet and the other being an improved plot' cover *527 ing about 7,500 square feet out of a total area of approximately 9,000 square feet which was subject to a diversity of interest. The court finds that the fair market value of the unimproved plot prior to the taking was $79,700. The fair market value after the taking was $70,600 leaving a total damage for the appropriation of 14 feet by 186 feet of unimproved property of $9,100.
So far as the unimproved plot was concerned the taking of frontage along Main Street was tantamount to nothing more than a reduction in depth of 14 feet with additional damage resulting by reason of a requirement of more grading for improvement purposes after the taking than before the taking. Both before and after, however, substantial grading would have been required and any development to a hundred-foot depth would have required demolition of the vacant brick building.
On the improved parcel, however, there is unanimous agreement among the experts who testified that the plot as developed by Esso Standard Oil Company was made useless for gasoline station purposes. The taking also had the effect of reducing the frontage on Main Street by approximately two feet.
The court finds that the fair market value of the improved plot prior to the taking was $43,900 and the value after the taking was $23,600 making total damage to the improved plot of $20,300.
Where property subject to a lease is involved in an appropriation, the amount of damage determined by the difference between the fair market value of the property prior to the taking and the fair market value of the remainder after the taking, stands in the place of the property and it is then necessary to divide the amount of the award among the claimants according to the nature of their respective estates. (Matter of City of New York [DeLancey St.], 120 App. Div. 700; Matter of City of New York, 182 N. Y. 281; 4 Nichols, Eminent Domain [3d. ed.], 144.)
The nature of the respective estates depends upon the agreement of the parties where the lease involves such an agreement. Here the lease contained a provision that in the event of an appropriation of a part of said premises with the balance in the opinion of the lessee not suitable for the operation of a drive-in gasoline station, the lease would terminate at the option of the lessee without further liability of the lessee and it further provided that nothing contained in the lease was to be deemed a waiver of the sole right of the lessee to any award for damages to it or to its leasehold interests caused by such taking, whether *528 made separately or as part of the general award. Under these circumstances the motion made by claimant Kaplan’s Realty Co., Inc., on the trial on which decision was reserved, to dismiss the claim of Esso Standard Oil Company is denied.
Generally a lessee is entitled to the fair market value of his lease in excess of the rent reserved. The testimony of experts for and employees of Esso Standard Oil Company asserted that this lease had a value in excess of the rent reserved of $1,500 per year, with an unexpired term of 16% years, of the depreciated cost of the building of approximately $20,950 plus $20,250 or a total of $41,200.
The fair market value is not determined by cost less depreciation although this is one factor which may be considered in arriving at fair market value. The evidence given by witnesses for Esso Standard Oil Company established that under its leases to station operators it had received total rental in 1955 of $1,800 and that it had to pay $1,500 to the landlord and approximately $350 in taxes.
One of these witnesses testified that Esso Standard Oil Company obtained a wholesale profit in excess of $.02 a gallon on sales of gasoline to the station operator. Even if $.02 of this wholesale profit could be attributed to the value of the real property rather than to legitimate business operation the total income was not substantially in excess of $3,800.
Even if Esso Standard Oil Company was correct in its estimate of 176,000 gallons per year for the remaining 17 years of the lease, which was 76% more business than the station had done in its first three years of existence, its gross rental return from the property would have amounted to $3,087. From this sum it had to expend $1,500 to Kaplan’s Realty Co., Inc., and $350 for taxes, leaving the sum of $1,237 to provide for amortization of $24,000 real estate improvements, maintenance costs, insurance, incidents of vacancy, and some return on investment.
The court finds that at the time of the taking the fair market value of the interest of Kaplan’s Realty Co., Inc., in this leasehold, consisting of a right to receive rent in the amount of $1,500 per year for 16% years and a reversionary interest in the land with its improvements and fixtures, was $31,900. The effect of the appropriation in making the plot as improved by Esso Standard Oil Company useless for a drive-in gasoline station, must be construed so far as fair market value is concerned, as terminating the right to receive rent and thereby converting the reversionary interest into a present possessory interest. The fair market value of this present possessory interest, without the right to receive rent, was $23,600, as set *529 forth above, making the damage to Kaplan’s interest in the leasehold property $8,300.
Esso Standard Oil Company had a present possessory right under the terms of its lease to 16% years undisturbed occupancy of the improved plot and an additional unimproved and unused area of approximately 2,200 square feet. It also had the obligation of paying $1,500 per year in rent and all taxes which might be assessed against the property. While the appropriation did not in and of itself destroy Esso Standard Oil Company’s possessory right, it did in effect make the occupancy of the plot as improved useless for a drive-in gas station and the lease agreement permitted Esso Standard Oil Company to terminate its liability and also reserved to it the right to recover the fair market value of this possessory interest. The court finds that the fair market value of this right as of the date of taking was $12,000.
There was testimony that the State contractor entered on the improved premises and did some work prior to the vesting of title in the State on April 30, 1956. This entry was apparently subsequent to the filing of the maps in the office of the Secretary of State which gave the State the right to enter upon the premises. During this period, from the testimony, the activity in the station increased. The testimony is extremely vague as to the duration of this entry upon the premises. While some inconvenience undoubtedly did occur, on this record it is impossible to assess any damages for this entry.
The fee and temporary easement were both appropriated on April 30, 1956 and Esso Standard Oil Company exercised its option to terminate the lease on May 1, 1956. Esso Standard Oil Company, therefore, has not shown that it suffered any damage by reason of this temporary easement. The court finds that claimant Kaplan’s Realty Co., Inc. suffered damage in the amount of $500 by reason of the temporary easement.
Esso Standard Oil Company is entitled to an award of $12,000 with interest thereon from April 30, 1956 to the date of entry of judgment in satisfaction of all damages suffered by it by reason of these appropriations.
Claimant Kaplan’s Realty Co., Inc. is entitled to an award in the amount of $17,900 with interest thereon from April 30, 1956 to the date of entry of judgment in satisfaction of all damages suffered by it by reason of these appropriations.
The findings of fact submitted by the parties have been marked and the facts found therein are made a part of this decision which constitutes the written decision of this court.
Let judgment be entered accordingly.