578 P.2d 994

**PEPSI-COLA METROPOLITAN BOT-TLING COMPANY, INC., a New Jersey Corporation, Appellant,**

v.

**Elias M. ROMLEY, Appellee.**

No. 1 CA-CIV 3401.

Court of Appeals of Arizona,
Division 1,
Department B.

Jan. 27, 1978.

Rehearing Denied March 24, 1978.

Review Denied April 25, 1978.

Jennings, Strouss & Salmon by Nicholas Udall, Robert E. Hurley, Richard B. Burnham, Phoenix, for appellant.

Moore & Romley by Elias M. Romley, Arthur E. Romley, Phoenix, for appellee.

## OPINION

JACOBSON, Judge.

The main issue on the merits of this appeal is whether the trial court properly allowed parol evidence to be introduced to explain a "condemnation" clause contained in a lease between appellant, Pepsi-Cola Metropolitan Bottling Company (Pepsi-

Cola) as lessee and appellee, Elias M. Romley (Romley) as lessor.

Although this issue arose out of a condemnation action brought by the State of Arizona, because of the proceedings in the trial court, the condemnor was not an active party litigant in the trial court and does not appear on appeal.

On June 17, 1972, the State of Arizona commenced this action to condemn several lots located in the central industrial district, together with the improvements situated on that property. The parcel involved lies on the east side of the Black Canyon Freeway on the northeast corner of Colter Street and the east access road of the freeway in Phoenix, Arizona. The parcel was owned by Romley and was leased by him to Pepsi-Cola.

Prior to the commencement of the condemnation proceedings, Romley and the State of Arizona agreed upon the fair market value of the property and improvements, which value included the leasehold interest, if any, of Pepsi-Cola. This amount was deposited into court and the state obtained immediate possession of the property.

Subsequently, Romley and Pepsi-Cola stipulated that the amount agreed upon between Romley and the state included the value of Pepsi-Cola's leasehold interest, if any; that the amount of that leasehold interest would not exceed $387,920.00; that the balance of any monies paid by the state could be paid to Romley and various mortgage holders; and that the action between Romley and Pepsi-Cola concerning the money deposited with the court would be divided for trial purposes into two issues: (1) the extent of the interest of Pepsi-Cola under its lease with Romley; and (2) the valuation of that interest.

The parties further stipulated that the state would not participate in the trial of this action other than to prepare and present to the court the Judgment and Final Order of Condemnation.

After condemning the property, the State of Arizona paid to Pepsi-Cola certain reloca-tion expenses to compensate it for removing its personal property and equipment from the leased premises. The state and Pepsi-Cola specifically agreed that this payment was not compensation for any damages as a result of the condemnation of the leasehold interest.

On the trial of the first issue, the trial court determined that under the terms of its lease, Pepsi-Cola was entitled to receive for condemnation of its leasehold interest, damages based upon the unamortized cost to Pepsi-Cola of its improvements made to the leased property in 1966. The trial court specifically found that Pepsi-Cola was not entitled to damages based upon an amount by which the economic rent as of June 19, 1972 exceeded the contract rent of the leased premises reduced to present value. These determinations were made the subject of a written order signed by the trial judge on July 30, 1975.

Following entry of the July 30, 1975 order, the parties stipulated to waive a jury trial as to the valuation of the interest determined by the trial court and further stipulated that based upon the measure of damages imposed by the trial court, the value of Pepsi-Cola's unamortized costs of improvement was $46,000.00. Based upon this stipulation, the trial court entered its judgment on October 6, 1975 and Pepsi-Cola appealed on December 1, 1975.

## PROCEDURAL MATTERS

Before setting out the facts underlying the lease between the parties, it is necessary to dispose of two procedural issues raised by Romley concerning our jurisdiction to hear this appeal.

Romley first contends that the July 30, 1975 order which determined the extent and measure of Pepsi-Cola's damages was an appealable interlocutory judgment under A.R.S. § 12–2101(G), and thus failure to appeal that judgment within 60 days precludes this court from considering the propriety of that order. A.R.S. § 12–2101 provides that an appeal may be taken:

"G. From an interlocutory judgment which determines the rights of the par-

ties and directs an accounting or other proceeding to determine the amount of the recovery."

We need not determine whether substantively the July 30, 1975 order falls within the definition of A.R.S. § 12–2101(G) as we feel our recent opinion in *Cook v. Cook*, 26 Ariz.App. 163, 547 P.2d 15 (1976) controls the result we must reach in this case. In *Cook*, we stated:

"We hold . . . that, under the language of A.R.S. § 12–2101(G), a summary judgment in favor of a plaintiff on a question of liability can be appealable. We further hold that the particular language of this statute requires that the interlocutory judgment, in order to be appealable, must in reality reflect a final 'determination of the rights of the parties' with respect to liability, and a determination that the only question remaining to be resolved is the 'amount of recovery.' To fulfill these requirements, the [interlocutory] judgment appealed from must not only be signed by the judge as required by Rule 58, Arizona Rules of Civil Procedure, *but must also contain some additional express language indicating finality.*" (emphasis added) *Id.* at 168, 547 P.2d at 20.

The trial court's order of July 30, 1975, contained no language which would indicate that this order was "final." Under the rationale of *Cook*, the order was therefore not appealable. Pepsi-Cola's timely appeal from the final judgment of October 6, 1975, properly placed before us the propriety of all prior non-appealable orders, including the order of July 30, 1975. A.R.S. § 12–2102; Cf. *Wells v. Tanner Bros. Contracting Co.*, 103 Ariz. 217, 439 P.2d 489 (1968). We therefore have jurisdiction to consider the merits of the July 30, 1975 order.

Romley also urges that the bond posted by Pepsi-Cola on appeal was fatally defective. This contention was the subject of a motion to dismiss during the pendency of this appeal, which motion we denied. We do not feel it necessary to reconsider that disposition. For the reasons stated in our order denying the motion to dismiss, we reject Romley's contention that the bond was defective so as to prohibit our entertaining jurisdiction of this appeal.[1]

## THE LEASE

The facts surrounding the controversy between Romley and Pepsi-Cola are that on September 28, 1975, Romley and Pepsi-Cola[2] entered into a lease agreement for 25 years for a portion of the property subsequently condemned by the State of Arizona. It is tacitly agreed that at that time neither party was aware of any condemnation action being instituted in the foreseeable future. However, that lease contained the following provision:

"If all of the demised premises, or if part thereof, but more than 25% of the usable floor area of the building or buildings on the demised premises shall be appropriated and taken for any public use by virtue of eminent domain or condemnation proceedings, the Lessee shall have the right to terminate this Lease upon written notice to the Lessor and rental shall be paid only to the time when the Lessee surrenders possession of the premises. Any rental paid in advance beyond the time Lessee surrenders possession of the premises shall be returned by the Lessor to the Lessee on demand. In the event less than 25% of the usable floor area is taken in such proceedings, or in the event that more than 25% of the

1. "Appellee's objections are of the type described in Rule 73(m), Rules of Civil Procedure, which, by the terms of that rule, are waived if not presented within ten days after the filing of the bond. No objections were made here within that time, and any such objections have now been waived." *Pepsi-Cola Metropolitan Bottling Co., Inc. v. Romley*, 1 CA–CIV 3401, order filed July 27, 1976.

2. The actual leasing parties to the 1955 lease were different than indicated. However, Romley and Pepsi-Cola either acquired the interest of or are, by name changes, the original contracting parties.

usable floor area is taken and the Lessee does not exercise its right to terminate this Lease, then this Lease shall continue in full force and effect, except that there shall be a reduction of the rent reserved hereunder which shall be made proportionate by an amount which the usable floor area taken bears to the original floor area of the building. Any award made for such condemnation or taking shall be applied to the repair and restoration of the remaining portion of the demised premises and the balance, if any, shall belong solely to the Lessor, and the Lessee shall have no interest therein. However, nothing herein contained shall be deemed to prevent Lessee from recovering from the condemning authority damages sustained by Lessee due to such taking  .   .  . ."

In 1964, Pepsi-Cola desired to increase the size of its bottling plant located on the leased premises and to that end a new lease was entered into expanding the leased premises. This new lease was executed on August 27, 1964 at which time the 1955 lease agreement was cancelled. Although there were various language differences between the 1955 and 1964 leases, the leases were identical insofar as the "condemnation clause" was concerned. The trial court found that at the time the 1964 lease was executed, the parties were aware that in the foreseeable future the Papago Freeway would be constructed which would result in the taking by condemnation of a part or all of the leased premises.

At the time of trial, Romley, over objection, was allowed to testify that at the time he and general counsel for Pepsi-Cola were negotiating the terms for the new 1964 lease, those parties read the 1955 condemnation clause and agreed that the correct interpretation of that clause was that in the event *all* of the property were condemned, that the entire award for the value of the leased premises would be paid to Romley and that Pepsi-Cola would have no interest in such an award. Romley further testified that in the interest of fairness, it was orally agreed that although no compensation was provided for in the lease, Romley would pay

the unamortized cost of the improvements Pepsi-Cola would make in 1966 to Pepsi-Cola in the event of a total taking. (General counsel for Pepsi-Cola, now retired, denied any such agreement as to the interpretation of the lease.)

Based upon the language of the condemnation clause and this testimony, the trial court made two basic findings:

1. That if the clause is not ambiguous, it provides by its terms "that in the event of condemnation of all of the leased premises the entire award for the value thereof would be paid to the Lessor and the Lessee would not participate therein; however, the Court ruled that Paragraph 20 [condemnation clause] is ambiguous and admitted parol evidence 'to ascertain the intention of the parties at the time the agreement was made.' The evidence received does not contradict, vary or alter the terms of Paragraph 20; in fact, it supports the Court's ruling that said paragraph provides, insofar as is here pertinent, that in the event of condemnation of all of the leased premises the entire award for the value thereof would be paid to the Lessor and the Lessee would not participate therein."

2. "Prior to the signing of the 1964 Lease, the Lessor and Lessee orally agreed that in the event the leased premises should be condemned, the Lessor would pay to Lessee the unamortized cost to Lessee of the improvements it made in 1966 to the building on the leased premises  .   .  . ."

Needless to say, we find the first finding by the court to be somewhat inconsistent— either the provision is ambiguous or it is not. Nevertheless, Pepsi-Cola's basic contention on appeal is that the lease provision is not ambiguous and therefore parol evidence was not admissible either to interpret the clause or to prove a contemporary oral agreement, that is, the amount of monies Romley would pay Pepsi-Cola upon total taking of the property by condemnation.

We, like the trial court, must first determine whether the provisions of the condemnation clause are ambiguous insofar as it deals with the right of Pepsi-Cola to share

in or seek damages in the event of a total taking of the leased property when Pepsi-Cola does not seek to terminate the lease.

■ In reaching this determination, we must read the clause as a whole, giving effect to all its terms, if reasonably possible. *Cf. Cavanaugh v. Schaefer,* 112 Ariz. 600, 545 P.2d 416 (1976); *Employer's Liability Assurance Corp. v. Lunt,* 82 Ariz. 320, 313 P.2d 393 (1957). With these admonitions in mind, it appears to us that as a whole, this clause has two major objectives in mind: (1) to grant to the lessee an option to terminate the lease in the event of condemnation of all or more than 25% of the leased premises, and (2) to define the rights of the parties in the event of condemnation of a part of the leased premises when the lessee does not exercise its option to terminate and remains in possession.

The first of these objectives was accomplished in the first two sentences of the clause and this is really not disputed by the parties. The second objective is also not seriously disputed by the parties, that is, the clause provides that in the event that less than 25% of the property is taken, or the lessee does not exercise its option to terminate, the lease will continue in full force and effect with an appropriate reduction in rent based on the amount of floor space remaining after the taking by condemnation. Obviously, this part of the clause has reference to a partial taking with a sufficient remainder to justify the lessee continuing in possession.

It is the next two sentences of the condemnation clause that cause the problem. For clarity, they are repeated here. The first sentence is:

"Any award made for such condemnation or taking shall be applied to the restoration of the remaining portion of the demised premises and the balance, if any, shall belong solely to the Lessor, and the Lessee shall have no interest therein."

Pepsi-Cola contends that this sentence must be modified by the previous portion of the lease, that is, it is only applicable to a partial taking with a sufficient remainder to justify the lessee continuing in posses-sion. Romley, on the other hand, would have the court read this sentence as follows: "Any award made for such condemnation or taking . . . shall belong solely to the Lessor, and the Lessee shall have no interest therein." The second sentence in contention immediately follows the foregoing and states: "However, nothing herein contained shall be deemed to prevent Lessee from recovering from the condemning authority damages sustained by Lessee due to such taking."

Pepsi-Cola contends that this sentence, since the prior sentences dealt with partial taking and continuation of the lease, reserves to it the right to seek damages from the condemning body in the event of a total taking. Romley, on the other hand, contends that this clause simply reserves to Pepsi-Cola the right to recover relocation expenses, a right which has been satisfied.

■ Turning to the first sentence in contention, we must agree that this sentence can only be applicable in the situation where a partial taking has occurred—the lessee has agreed to remain in possession, and restoration is necessary for the continued enjoyment of the premises. To hold otherwise would require us to read out of that clause the precondition of the condemnation award belonging solely to the lessor. The operative words are "the award . . *shall* be applied to the repair and restoration of the remaining portion of the demised premises and the *balance,* if any, shall belong solely to the lessor . . . ." Thus, it is clear that it is only the *balance,* if any, after repairs and restoration which belongs to the lessor. Obviously, if there are no repairs or restoration, there can be no *balance* and hence nothing belongs to the lessor.

As to the next sentence quoted above, Romley's contention that "damages" refer to removal expenses flies in the face of logic and the facts. This lease was entered into in 1964. At common law, damages for moving or relocation expenses were not included within just compensation for taking by eminent domain. *State v. Chun,* 91 Ariz.

317, 372 P.2d 324 (1962). It was not until Congress passed the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, 42 U.S.C. § 4601 *et seq.*, (1970) that property owners were allowed the right, upon condemnation, for compensation for moving and relocation expenses. This act was made applicable to the states as a federal requirement for states to participate in federal highway funds. *See*, A.R.S. §§ 28–1841 through 28–1853. (These sections were originally enacted in 1969 as §§ 18–141 through 18–150.-03.) To conclude that parties in 1964 were reserving rights which would not even come into existence until five years later is simply unreasonable and illogical.

We therefore conclude that the obvious meaning of this sentence is that in the event of a total taking by condemnation and a refusal to terminate the lease, the lessee is entitled to seek damages for the loss of its leasehold estate from the condemnor.

Romley argues, however, that the use of the word "award" in one sentence and the word "damages" in another, leads to an ambiguity which parol evidence can clarify. We disagree.

In the context that the words are used, "award" obviously refers to the amount of money available to make repairs and restoration, the balance belonging to the lessor. On the other hand, "damages sustained" refers to the chose-in-action reserved to the lessee by reason of the taking. In the context of the clause, the words are not ambiguous.

Finally, Romley contends that parol evidence was admissible to show the situation of the parties and the surrounding circumstances at the time the lease was entered into in order to ascertain their true intent in using the language employed. In particular, it is contended that the parties' awareness that plans for the Papago Freeway might necessitate condemnation of part or all of the premises is significant. We would agree that in certain circumstances it may be necessary for the court to receive evidence concerning circumstances surrounding the negotiations of the contract. *See, Sam Levitz Furniture Co. v. Safeway Stores, Inc.*, 105 Ariz. 329, 464 P.2d 612 (1970). However, those surrounding circumstances cannot be used to make what is unambiguous, ambiguous, or to vary the terms of a clear and unambiguous contract.

Likewise, to adopt the proposition that this clause is ambiguous would require us to completely disregard that portion of the lease which provides that:

"However, nothing herein contained shall be deemed to prevent Lessee from recovering from the condemning authority damages sustained . . . ."

*See, United States v. Right to Use, etc., Land, Alexandria, Virginia*, 484 F.2d 1140 (4th Cir., 1973); *Esso Standard Oil Co. v. State*, 15 Misc.2d 523, 181 N.Y.S.2d 578 (1959), modified on other grounds, 10 A.D.2d 760, 197 N.Y.S.2d 539 (1960). Because of this particular provision in the clause, we do not find the cases cited by Romley to be controlling.

We hold that the condemnation clause is not ambiguous and the trial court erred in allowing parol evidence to vary its terms. We further hold that under the unambiguous terms of the condemnation clause, Pepsi-Cola was entitled to seek compensation for the entire destruction of its leasehold interest.

We now turn to Romley's contention that a separate oral agreement was entered into between Romley and Pepsi-Cola, limiting Pepsi-Cola's recovery to the unamortized cost of its improvements. This contention, in our opinion, also runs afoul of the parol evidence rule. Udall, in his treatise on evidence, articulates the test to be applied in determining whether other oral agreements, where the parties have entered into a written contract, are admissible:

"The test to determine whether an offered additional oral agreement is within the field of the written agreement, is to compare the two and determine whether parties situated as were the ones to the contract, would naturally and normally

include the one in the other *if both were made.*" Udall, Arizona Laws of Evidence, § 157 (1960).

The lease agreement was negotiated between Romley, and eminent member of the Arizona Bar on the one hand, and general counsel of Pepsi-Cola on the other. It is inconceivable to us that these two qualified lawyers would have failed to place in their written contract so important an item as the amount of recovery that Pepsi-Cola would be entitled to in the event of a total condemnation of its leasehold interest. This is especially true where the parties by their written contract spoke on the issue of allowing the lessee to recover "damages sustained" by such a condemnation. We hold that such a provision limiting recovery "would naturally and normally" be included in the written lease and therefore is unprovable by oral testimony.

Since we reverse in this matter and remand for a determination of the fair market value of Pepsi-Cola's leasehold interest, we note that the proper measure of that value is the difference between the market value of the unexpired term of the lease over and above the rent stipulated to be paid to the lessor under the lease, reduced to present value. 4 Nichols on Eminent Domain, § 12–42(3), (3rd. ed., 1974).

The judgment of the trial court is reversed and the matter remanded for a determination of value of Pepsi-Cola's leasehold interest in accordance with this opinion.

WREN, P. J., and EUBANK, J., concur.