NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

LUCKY HORSE BARN, INC., et al., *Plaintiffs/Appellants*,

*v.*

DALLY YARBROUGH, et al., *Defendants/Appellees*.

No. 1 CA-CV 25-0244

FILED 12-09-2025

Appeal from the Superior Court in Maricopa County
No. CV2021-010256
The Honorable John L. Blanchard, Judge

**AFFIRMED**

COUNSEL

Lily Richardson, Tempe
By Lily Richardson
*Counsel for Plaintiffs/Appellants*

Tiffany & Bosco PA, Phoenix
By Lance R. Broberg, Nicholas A. Beatty
*Counsel for Defendants/Appellees*

---

## MEMORANDUM DECISION

Judge Brian Y. Furuya delivered the decision of the Court, in which Presiding Judge Angela K. Paton and Judge Daniel J. Kiley joined.

---

**F U R U Y A**, Judge:

¶1 Marie Sebastien and Lucky Horse Barn, Inc. ("Lucky Horse") appeal from summary judgment granted in favor of Dally Yarbrough, Jennifer Yarbrough, and Rocking Dd, LLC. For the following reasons, we affirm.

### FACTS AND PROCEDURAL HISTORY

¶2 Sebastien established Lucky Horse as a "trail riding and horseback riding lesson business." Sebastien purchased six horses from Low Arrow Performance Horses, LLC ("Low Arrow") for $28,000 in early 2021 after communicating via Facebook and text with Alexis McQuarie.

¶3 At the time of purchase, McQuarie and Dally[1] were members of Low Arrow according to documents filed with the Arizona Corporation Commission ("ACC").[2] Despite his membership status in Low Arrow as recorded by the ACC, Dally had signed an agreement selling his interest in Low Arrow to McQuarie in January 2021, before Sebastien began negotiations to purchase the horses. After Dally resigned his membership, Low Arrow paid pro-rated rent to the landowner as a function of how many horses Low Arrow sold and Dally continued to monitor Low Arrow's operations on the ranch because of limited space. McQuarie agreed she would provide Dally with bills of sale for his "executive approval" for the purposes of tracking the pro-rated lease payments and the number of horses present on the ranch.

---

[1] Because Dally and Jennifer Yarbrough share the same last name, we refer to them individually by first names and to the two of them collectively as "the Yarbroughs." The informal reference serves to avoid confusion, and we intend no disrespect thereby.

[2] McQuarie filed Articles of Amendment with the ACC for Low Arrow to remove Dally as a member in August 2021.

¶4 After purchase negotiations, Sebastien and Low Arrow executed bills of sale stating the horses were sold "as is." The bills of sale identified Sebastien as the buyer and Low Arrow as the seller. McQuarie signed the bills of sale on behalf of Low Arrow and Dally initialed them for "executive approval," as agreed. Sebastien initialed the provisions in the bills of sale that stated, "no exchanges" and "no refunds," and that she had not had the horses examined by a veterinarian or viewed the horses in person.

¶5 After payment and delivery of the horses, Sebastien believed the horses had chronic injuries and age-related deficits. Ultimately the horses were returned to Low Arrow.

¶6 Sebastien and Lucky Horse Barn sued Low Arrow, McQuarie, the Yarbroughs, and Rocking Dd.[3] Sebastien essentially alleged that McQuarie made false statements and misrepresented the age and condition of the horses.

¶7 As against the Yarbroughs, Sebastien pleaded claims of rescission, fraud in the inducement, consumer fraud, common law fraud, intentional misrepresentation, breach of the implied contractual duty of good faith and fair dealing, negligent misrepresentation and conversion, and constructive fraud and unjust enrichment. She pleaded claims against Rocking Dd for consumer fraud, intentional misrepresentation, negligent misrepresentation and conversion, constructive fraud and unjust enrichment, and aiding and abetting.

¶8 The superior court granted summary judgment to the Yarbroughs and Rocking Dd on all claims. The court found they were not parties to the contract for the sale of the horses. Further, the court found Dally had formally withdrawn from Low Arrow at the time of the sale, had not participated in the sale, and did not make any statements or otherwise communicate with Sebastien about the horses.

¶9 The superior court ordered Sebastien to pay $180,889.97 in attorneys' fees to the Yarbroughs and Rocking Dd and entered final judgment under Arizona Rule of Civil Procedure 54(b).

---

[3] Rocking Dd is a horse ranch and boarding facility where Dally is a manager.

¶10 We have jurisdiction over Sebastien's timely appeal under A.R.S. § 12-2101(A)(1).

**DISCUSSION**

**I. Grant of Summary Judgment**

¶11 We review a grant of summary judgment de novo to determine whether there is a genuine dispute of material fact and whether judgment as a matter of law is appropriate. Ariz. R. Civ. P. 56(a); *Glazer v. State*, 237 Ariz. 160, 167 ¶ 29 (2015). We view the facts in the light most favorable to Sebastien as the non-moving party. *See Carroll v. Robinson*, 178 Ariz. 453, 456 (App. 1994). Summary judgment is proper if a defendant fails to produce evidence creating a genuine issue of fact for the essential elements of the claims against them. *Aranki v. RKP Invs., Inc.*, 194 Ariz. 206, 209 ¶ 12 (App. 1999).

¶12 Sebastien seeks to hold the Yarbroughs personally liable for contract, misrepresentation, and fraud-based claims stemming from statements made by McQuarie. Sebastien admitted at her deposition that she never communicated with either of the Yarbroughs and they never made any representations to her about the horses. This admission defeats her misrepresentation and fraud-based claims against the Yarbroughs, all of which require the Yarbroughs to have made a misrepresentation to Sebastien about the horses. *See John Munic Enters., Inc. v. Laos*, 235 Ariz. 12, 16 ¶ 10 (App. 2014) (fraudulent inducement); *Dunlap v. Jimmy GMC of Tucson, Inc.*, 136 Ariz. 338, 342 (App. 1983) (consumer fraud); *Haisch v. Allstate Ins. Co.*, 197 Ariz. 606, 610 ¶ 15 (App. 2000) (negligent misrepresentation); *Wells Fargo Credit Corp. v. Smith*, 166 Ariz. 489, 494 (App. 1990) (intentional misrepresentation); *Echols v. Beauty Built Homes, Inc.*, 132 Ariz. 498, 500 (1982) (common law fraud); *Rhoads v. Harvey Publ'ns, Inc.*, 145 Ariz. 142, 148–49 (App. 1984) (constructive fraud).

¶13 As for her contract-based claims, Sebastien provided no evidence to support any claims independently against Jennifer as to her own liability, separate from the marital community. On appeal, Sebastien focuses on Dally, arguing the superior court erred in granting summary judgment because there are material facts in dispute, including when Dally withdrew from Low Arrow, whether Dally was a party to the bills of sale, whether the horses were sold "as is," and whether Dally

participated in the horse sales.[4] But even if Dally were still a member of Low Arrow at the time of the sale and gave his "executive approval" for the sale, Arizona law prohibits his personal liability. Low Arrow is a limited liability company governed by the Arizona Limited Liability Company Act ("the Act"), A.R.S. §§ 29-3101 through 29-4202. The Act provides that a member of a limited liability company is "not personally liable" for the company's debts or liability or "for the acts or omissions of any other member . . . solely by reason of being or acting as a member." A.R.S. § 29-3304(A).

¶14        Sebastien argues Dally can be liable under the "piercing the corporate veil" doctrine, which permits courts to disregard corporate status when a corporation is the alter ego of an individual and "the observance of the corporate form would sanction a fraud or promote injustice." *See Employer's Liab. Assurance Corp. v. Lunt*, 82 Ariz. 320, 323 (1957). No reported Arizona decision has explicitly held that a party may "pierce the corporate veil" of a limited liability company, though at least one recent unreported decision has assumed that they are capable of doing so. *See Barbano v. Brown*, 2023 WL 6896980 (Ariz. App. 2023) (mem. decision). Assuming, without deciding, that the veil of a limited liability company can be pierced, Sebastien still must show by a preponderance of the evidence that we can disregard Low Arrow's "corporate" status. *See Ize Nantan Bagowa, Ltd. v. Scalia*, 118 Ariz. 439, 443 (App. 1978).

¶15        The corporate veil may be pierced and the corporate entity disregarded if the corporation is the "alter ego or business conduit of a person." *See Loiselle v. Cosas Mgmt. Grp., LLC*, 224 Ariz. 207, 214 ¶ 30 (App. 2010) (citation omitted). Factors used to determine the existence of an alter ego relationship include the "plaintiff's lack of knowledge of the separate corporate existence," failure to maintain corporate formalities, commingling of corporate and personal funds, and diversion of corporate property for personal use, *Deutsche Credit Corp. v. Case Power & Equip. Co.*, 179 Ariz. 155, 160 (App. 1994), as well as undercapitalization and unwarranted divestment or asset stripping, *Scalia,* 118 Ariz. at 443.

---

[4]        Sebastien does not challenge the court's grant of summary judgment to Rocking Dd in her opening brief. She also fails to develop any argument as to her claims for conversion or unjust enrichment. Thus, she waives these claims. *See Polanco v. Indus. Comm'n*, 214 Ariz. 489, 491 ¶ 6 n.2 (App. 2007).

¶16     But in response to the motion for summary judgment, Sebastien only argued that:

- [Dally] and McQuarie were the only members of Low Arrow and [Dally] had final executive approval over the horse sales;

- The actual ranch land where Low Arrow operates is owned by [Dally];

- [Dally] admitted to never filing tax returns for Low Arrow from 2018 to 2021;

- Plaintiff was told McQuarie and [Dally] were business partners;

- Both McQuarie and [Dally] participated in the sale of the horses.

¶17     Even taken as true, none of this evidence speaks directly to any of the factors that would indicate Dally disregarded Low Arrow's "corporate" form. *See Deutsche Credit Corp.*, 179 Ariz. at 160; *Scalia*, 118 Ariz. at 443. And even if some of this evidence could possibly relate indirectly or impliedly to the factors, such an attenuated connection is insufficient to establish that Low Arrow was Dally's "alter ego" by a preponderance of the evidence. *See Orme School v. Reeves*, 166 Ariz. 301, 309 (1990) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) (explaining the "mere existence of a scintilla of evidence is insufficient" to withstand a motion of summary judgment, and that "there must be evidence on which the jury could reasonably find for plaintiff.")). Thus, Sebastien has not shown a genuine issue of material fact to vacate summary judgment. *See Aranki*, 194 Ariz. at 209 ¶ 12.

## II.     Attorneys' Fees

¶18     Sebastien challenges the amount of attorneys' fees awarded to the Yarbroughs and Rocking Dd.

**¶19**      We review the amount of the court's attorneys' fee award for an abuse of discretion. *ABC Supply, Inc. v. Edwards*, 191 Ariz. 48, 52 (App. 1996). We will affirm a reasonably supported fee award. *Rudinsky v. Harris*, 231 Ariz. 95, 101 ¶ 27 (App. 2012).

**¶20**      The Yarbroughs and Rocking Dd hired three law firms during the litigation: Rose Law Group, Gust Rosenfeld, and finally Tiffany & Bosco. The Yarbroughs' and Rocking Dd's application for attorneys' fees contained a supporting affidavit by their Tiffany & Bosco attorneys and time entries from all three law firms specifying dates, times, and the billing attorney for each task performed for the Yarbroughs and Rocking Dd, as required by *Schweiger v. China Doll Rest., Inc.*, 138 Ariz. 183, 187–88 (App. 1983).

**¶21**      Sebastien argues that some of the Rose Law Group invoices were only addressed to McQuarie and not the Yarbroughs. But Rose Law Group represented all the defendants. That some of the invoices were addressed only to McQuarie does not prove that the legal services, performed on behalf of all defendants, were severable for purposes of determining a fee award.

**¶22**      Sebastien further argues the affidavit submitted in support of the application for attorneys' fees is insufficient to support the billing rates charged by Rose Law Group and Gust Rosenfeld. But the affidavit attested to the attorneys' review of the other law firms' invoices, which were attached to the fee application, and attested to the reasonableness of the rates and amounts billed, given the experience of the billing attorneys.

**¶23**      Finally, Sebastien fails to develop her argument[5] that the fee award is excessive and disproportionate to the scope of the litigation and thus waives it. *See Ritchie v. Krasner*, 221 Ariz. 288, 305 ¶ 62 (App. 2009) (failure to present and address arguments, supported by authority can constitute abandonment and waiver of the claim). Because Sebastien did not establish that any particular billing entry was unreasonable, the court did not abuse its discretion in determining the amount of the attorneys' fees awarded. *Rudinsky*, 231 Ariz. at 102 ¶ 33.

---

[5]      To the extent Sebastien relies on her challenge to billing entries by attorney Kyle Kopinsky, the record contains invoices confirming Kopinsky's fees.

**¶24**        Therefore, we award costs to the Yarbroughs and Rocking Dd as the prevailing parties upon compliance with Arizona Rule of Civil Appellate Procedure 21. In our discretion, we deny the Yarbroughs' and Rocking Dd's request for attorneys' fees on appeal.

## CONCLUSION

**¶25**        We affirm.

